## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

P.M. a minor, by and through her parent,
Terpsehore Maras,

          Plaintiffs,

         v.                                Civ. No.

MAYFIELD CITY SCHOOL DISTRICT
BOARD OF EDUCATION; DR.
MICHAEL J. BARNES, in his individual
capacity and in his official capacity as
Superintendent of the Mayfield City School
District; and RON FORNARO, SUE
GROSZEK, AL HESS, GEORGE J.
HUGHES, and JIMMY TERESI, all in their
individual capacities and in their capacities
as members of the Mayfield City School
District Board of Education,

          Defendants.



## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'</u>
## <u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>

MAY IT PLEASE THE COURT:

Plaintiffs, P.M. a minor, by and through her parent, Terpsehore Maras, *pro se*, hereby file

this Memorandum of Law in Support of Their Motion for Temporary Restraining Order against

Defendants, Mayfield City School District Board of Education ("School Board"); Dr. Michael

J. Barnes, in his individual capacity and in his official capacity as Superintendent of the Mayfield

City School District; and Ron Fornaro, Sue Groszek, Al Hess, George J. Hughes, and Jimmy

Teresi, all individual elected officials sued in their individual capacity and in their capacity as

members of the School Board (collectively, "Defendants"). Plaintiffs allege and aver as follows:

1

## INTRODUCTION

Plaintiff P.M. is a minor child who resides in Mayfield City School District ("MCSD"), in Cuyahoga County, Ohio. Plaintiff P.M. is and was at all times relevant hereto a student at a Mayfield City School District public school. Suit is brought herein on P.M.'s behalf by her mother, Plaintiff Terpsehore Maras. Plaintiff Terpsehore Maras is an adult individual who is a resident and taxpayer in the Mayfield City School District, in Cuyahoga County, Ohio. Plaintiff Terpsehore Maras is the parent of Plaintiff P.M.

Defendant Mayfield City School District Board of Education (the "School Board" or the "Board") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Mayfield City School District. Defendant Dr. Michael J. Barnes was at all relevant times the Superintendent of the Mayfield City School District; in that capacity, acting under color of law, he is responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the Mayfield City School District. In addition, Defendant Ron Fornaro is currently the President of the School Board, while Defendant Jimmy Teresi is currently the Vice President of the School Board. The other three Board members are Defendant Sue Groszek, Defendant Al Hess, and Defendant George J. Hughes. Plaintiffs have sued all Defendants in their individual and official capacities.

## FACTS

### A.      Mayfield School District Board of Education

The Mayfield School District Board of Education is "composed of five citizens who are representatives of the residents of Gates Mills, Highland Heights, Mayfield Heights and Mayfield Village. Board members are elected 'at large' on a nonpartisan ballot and serve for staggered terms

of four years." https://www.mayfieldschools.org/BoardofEducation.aspx.  As discussed above, the five individuals currently serving as School Board Members are Defendants Ron Fornaro, Sue Groszek, Al Hess, George J. Hughes, and Jimmy Teresi.  Defendant Ron Fornaro, the President of the School Board, signed an Oath of Office on January 10, 2018, Mr. swearing to support the Constitution of the United States and the Constitution of the State of Ohio, and to faithfully and impartially discharge his duties as a Vice-President of the School Board (though he is now President of the School Board) to the best of his ability, and in accordance with the laws "now in effect and hereafter to be enacted." **See Exhibit A.**  Defendant Sue Groszek signed her Oath of Office on January 8, 2020 **(see Exhibit B)**, as did Defendant Al Hess **(see Exhibit C).**  Defendant George J. Hughes signed his Oath of Office on January 10, 2018 **(see Exhibit D)**, as did Defendant Jimmy Teresi **(see Exhibit E)**.

This five-member School Board unanimously appointed Defendant Dr. Michael J. Barnes to serve as Superintendent of Schools, effective July 1, 2021. As Superintendent, Dr. Barnes is charged with the administration of the MCSD.

**B.      Relevant Policies of the Mayfield School District Board of Education**

Mayfield Board Policy 8450.01, adopted by the Board on September 23, 2020 and attached hereto as **Exhibit F**, explains that the Superintendent's decision to require protective facial covering during pandemic and epidemic events was made "through Board of Education plans/resolution(s) in alignment with public health officials and/or in accordance with government edicts and including any Pandemic Plan developed by the District's Pandemic Response Team under Policy 8420.01." Notably, the Policy states, "***Facial masks/coverings generally should not include surgical masks*** or respirators ***unless medically indicated (as those should be reserved for healthcare workers)*** or masks designed to be worn for costume purposes." *Id.* (emphasis added).

In addition, Mayfield Board Policy Section 1000, po1130, titled "CONFLICT OF INTEREST" and attached hereto as **Exhibit G**, provides, in pertinent part,

> A. (1) No employee, officer, or agent shall engage in or have a financial interest, directly or indirectly, in any activity that conflicts or raises a reasonable question of conflict with his/her duties and responsibilities in the school system.
>
> (2) Employees, officers, and agents shall not engage in business, private practice of their profession, the rendering of services, or the sale of goods of any type where advantage is taken of any professional relationship they may have with any student, client, or parents of such students or clients in the course of their employment or professional relationship with the School District.

\*\*\*

> E.      Employees, officers and agents must disclose any potential conflict of interest which may lead to a violation of this policy to the School District. Upon discovery of any potential conflict of interest, the School District will disclose, in writing, the potential conflict of interest to the appropriate Federal awarding agency or, if applicable, the pass-through entity.

## C. MCSD's COVID-19-Based Measures

Through Board Action 0202-060, the Board unanimously adopted the following resolution, attached hereto as **Exhibit H**:

\*\*\*

> WHEREAS, the Mayfield Board of Education continues to work diligently to address *__the many challenges that COVID-19 has caused and is likely to cause in the future as well as complying with and modeling behaviors consistent with the stay at home order.__*
>
> NOW, THEREFORE, BE IT RESOLVED by the Mayfield Board of Education that it *__suspends community communications / public comments section of its regular meeting agendas until the COVID-19 emergency ceases.__*

Exhibit H (emphasis added).

In June 2021, the MCSD, through Defendant Dr. Michael J. Barnes, issued its "Plan for Safe Return to In-person Instruction". See **Exhibit I**. In its "Policy for Mitigation Strategies

4

Section", the MCSD states, "We are anticipating that the health and safety protocols will continue to be practiced during the 2021-22 school year. This, of course, depends on orders from the Governor and the Board of Health. These guidelines are changing, but you can anticipate that we will require wearing masks and social distancing when in hallways, classrooms, common spaces and cafeterias." *Id.* at p. 2. The Plan also included a statement that "The Mayfield City School District seeks public input regarding the District's plans for a safe return to in-person instruction for the 2021-22 school year. Please call 440.995.6800." *Id.* at p. 4.

On August 4, 2021, the MCSD, through Defendant Dr. Michael J. Barnes, issued a Mask Recommendation to Mayfield teachers, staff, parents, and students, in which the MCSD stated,

> **Face masks in grades Pre-K-12 are strongly recommended for our students, teachers and staff.**
>
> ➔ **Wearing a face mask may greatly reduce the risk of students, teachers and staff having to quarantine if a COVID -19 positive case/s are reported in any of our Mayfield schools.**
> ➔ **It is your right to wear or not wear a face mask. We support either decision. Please be respectful of the choice of our students, teachers and staff.**

See **Exhibit J**. The Mask Recommendation also provides, in pertinent part,

> 2. As of this date, there is **no state-wide required masking mandate** for the 2021-2022 school year for staff or students.
>
> 3. **The Mayfield City School District supports all students or staff members in their <u>choice</u> to wear a face mask.** It is important to note that the Ohio Department of Health **strongly recommends** masks be worn indoors by all individuals who are not fully vaccinated (age 2 years and older). The CDC and CCBH as of August 3, 2021, now recommend that all individuals (vaccinated or not) wear a mask while indoors where community transmission is high.

*Id.* at pp. 1-2 (emphases in original). In addition, the Mask Recommendation states that "**Wearing a face mask may greatly reduce the risk of students, teachers and staff having to quarantine if a COVID-19 positive case/s are reported in any of our Mayfield schools. We will continue**

5

to monitor the guidance and recommendations of the Centers for Disease Control and Prevention, State of Ohio and Cuyahoga County Board of Health." *Id.* at p. 2 (emphasis in original).

On August 21, 2021, Defendant Dr. Michael J. Barnes, without obtaining any input from Plaintiffs, sent an e-mail to Mayfield teachers, staff, parents, students and community (the "mask mandate") stating as follows:

> Students returned to campus during phase-in schedules, beginning August 16th with all students on campus at full capacity on August 18th. ***During this week, school officials have observed very few students in grades 6-12 wearing face masks. This is concerning. Our priorities for this school year are to maintain the health and safety of our school community and continue learning in person, in school, together.***
>
> Therefore, pursuant to Mayfield Board Policy 8450.01 Mayfield City Schools will mandate face masks in all school buildings for all students, teachers, staff and visitors in grades Pre-K-12, effective Monday, August 23rd. We will review the mandate weekly and give updates at regular Board of Education meetings.
>
> ***The district's Pre-K-12 face mask mandate for students, staff and visitors in our schools is our best organizational strategy to support and protect our students' academic time and to maintain a stabilized learning environment.***
>
> \*\*\*
>
> See attached **Exhibit K** (emphases added.)

## D. Plaintiffs Place Defendants on Notice of Lawsuit.

Upon receiving the Superintendent's e-mail, Plaintiff, Terpsehore Maras, e-mailed a response to the Defendants informing them that she would be filing a lawsuit due to the Defendants' violation of Ohio's open meetings laws and violation of the United States and Ohio Constitutions through their commission of unauthorized restrictions of liberty; identification of a minor as a potential public health risk with no jurisdiction; identification and declaration of a minor as a potential public health risk with no evidence; declaration of mandates to restrict a minor's liberty with no legal jurisdiction; declaration of mandates that have no legal jurisdiction to restrict civil

liberties; declaration of mandates restricting liberties with no prior public comment; declaration of mandates imposing dress code that does not align with dress code regulations; declaration of mandates as medical experts; and deprivation of students' and parents' civil liberties with no authority." See **Exhibit L**. In her letter, Ms. Maras also informed Defendants that she was sending a copy of the letter to Ohio Attorney General David Yost, a copy of which letter is attached hereto as **Exhibit M**. Ms. Maras concluded her letter by noting that she would be seeking a temporary restraining order unless the purported "mandate" was not rectified by the close of business on August 23, 2021. See Exhibit M.

**E. August 25, 2021 Regular Meeting of the School Board**

Thereafter, on August 23, the School Board issued its agenda for its next regular meeting, scheduled for Wednesday, August 25. See **Exhibit N**. The agenda indicated that the mask mandate would be discussed at the meeting. *Id.* At the August 25, 2021, meeting, Plaintiff, Terpsehore Maras, approached the School Board members to speak during open discussion of the mandate despite objections from the School Board that Ms. Maras did not have the right to speak since she did not submit an application to speak. In fact, Ms. Maras had arrived at the meeting location and completed an application to speak long before the mask mandate discussion commenced but no one from the School Board accepted Ms. Maras's application to speak. Once she was finally permitted to speak, which was at the end of the mask mandate discussion, Ms. Maras first notified the School Board that upon learning the School Board would be discontinuing public comments during virtual meetings due to COVID, she e-mailed the Board members to ask why public comments were being disabled given that, to her knowledge, COVID cannot be transmitted via a computer or telephone. Ms. Maras stated at the meeting that the Board never replied to her e-mail and that she was never invited to comment on the Superintendent's decision to reinstate to mask mandate on August 20. Ms. Maras

also informed Defendants that she was in possession of pictures recently taken of the Defendants at parties not wearing masks. Moreover, she explained that went she arrived at the Superintendent's office on August 23 to hand-deliver the notice of intent to sue, she encountered three individuals, the Assistant Superintendent, the Assistant to Superintendent Michael J. Barnes, and a third employee, who were not wearing masks despite the mask mandate requiring them to do so.

Ms. Maras, referring to guidance from the Center for Disease Control and Prevention ("CDC"), also pointed out that in contravention to the School Board's masks mandate for students in grade Pre-K through 5, the CDC holds the position that masks mandates for children that young are detrimental and have zero efficacy. In addition, Ms. Maras noted that the Board likely violated its Conflict Interest Policy (see Exhibit G) through its provision of a lottery award to a student enrolled in a Mayfield City School District school. Specifically, Defendant Ron Fornaro is employed through the Ohio Lottery Commission and serves under the Director and Staff of the Ohio Lottery Commission as an Instant Ticket Product Manager. Mr. Fornaro also shares a seat on the Mayfield Schools Foundation as the Board of Education's appointee. See https://mayfieldschoolsfoundation.org/board-bios. Mr. Fornaro's family itself has been interest of many Mayfield city alleged nepotism controversies. For example, see https://www.cleveland.com/hillcrest/2014/04/mayfield_heights_service_depar.html. In addition, Upon information and belief, the Foundation itself has engaged in a number of conflicts of interest outside of Mr. Fornaro's Ohio Lottery connection, such as connections to Chris Smith whose firm, ThenDesign Architecture, has received money from Mayfield city schools for architectural projects, and connections to Mary Beth Mac, who is a Program Manager at the Cleveland Clinic Community Relations. The Mayfield Schools Foundation's Board also retains Defendant George Hughes, who sits on that board as a community member. *Id.* Curiously, and beyond what should be a statistical

anomaly, a Mayfield High School student was announced the winner of the Vax-a-million lottery in an entry that was participated by 132,000 Ohioans between the ages of 12-17. The lottery was operated through the Ohio Lottery Commission and the Ohio Department of Health. Ms. Maras stated her belief that the granting of a lottery award to a student in a school district served by Mr. Fornaro's was likely a conflict of interest, which would have resulted in the Board violated its policy (see Exhibit G).

Ms. Maras concluded her public comments at the School Board meeting by informing Defendants that she would be removing each of the Defendants in accordance with law for misconduct and that she would be retaining the assistance of an expert environmental toxicologist who is qualified to speak to the health and safety benefits of masks.

**F. The Masking Requirement Causes Immediate and Irreparable Harm to Students, Staff, and Community.**

In his Affidavit, attached hereto as **Exhibit O**, Stephen E. Petty, an expert in the field of Industrial Hygiene who has testified as to the futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19, states the following:

   ***

  3. I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia). My curriculum is attached hereto as **Exhibit i**.

  4. I have served as an expert in personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified as, and provided testimony as, an expert in these areas.  My list of representative cases is attached hereto as **Exhibit ii**.

***

  20. For many reasons, personal protective equipment (PPE) is the <u>least</u> desirable way to protect people from very small airborne aerosols. Moreover, masks

are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and Health Administration (OSHA) Respiratory Protection Standard (RPS), namely 29 CFR 1910.134.

21. Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols. A device referred to as a respirator is required to provide such protection.

22. The AIHA, in their September 9, 2020 Guidance Document for COVID-19 (**Exhibit iii**) noted that the acceptable relative risk reduction methods must be $\geq$90%; mask were shown to be only 10% and 5% (see Exhibit iii - Figure 2) and far below the required 90% level.

23. Similarly, Shah, et al, 2021 (**Exhibit iv**), using ideally sealed masks and particles 1 micron in size, reported efficiencies for the more commonly used cloth masks and surgical masks of 10% and 12% respectively. No mask can be perfectly sealed, thus "real world" effectiveness would be even lower.

\*\*\*

29. I have reviewed the Mayfield City School District (MCSD) "Protective Facial Covering Policy During Pandemic/Endemic Events" as set forth in the Policy Manual of the MCSD Board of Education.
30. Ordinary facial coverings like the ones required by the MCSD facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

31. Because of the gaps around the edges of facial coverings required by MCSD's policy, they do not filter out Covid-19 aerosols. The policy stating masks will be worn without gaps defies known science that masks worn today cannot be sealed and always have gaps.

32. The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

33. Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

34. Even short breaks (e.g. to eat) expose individuals to Covid-19 aerosols in indoor spaces.

35. Ordinary cloth facial coverings like the ones required by the MCSD mask requirement do not provide any filtering benefit relative to particles smaller than 5μ if not sealed.

\*\*\*

37.  As explained in an article titled "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" that was published on April 20, 201, in the *International Journal of Environmental Research and Public Health* and that is attached to this Affidavit as **Exhibit iv**, the following negative effects from wearing masks was reported in the literature:

| Increased risk of adverse effects when using masks: | | |
|---|---|---|
| **Internal diseases** | **Psychiatric Illness** | **Neurological Diseases** |
| COPD | Claustrophobia | Migraines and Headache Sufferers |
| Sleep Apnea Syndrome | Panic Disorder | Patients with intracranial Masses |
| advanced renal Failure | Personality Disorders | Epilepsy |
| Obesity | Dementia | |
| Cardiopulmonary Dysfunction | Schizophrenia | |
| Asthma | helpless Patients | |
| | fixed and sedated Patients | |
| **Pediatric Diseases** | **ENT Diseases** | **Occupational Health Restrictions** |
| Asthma | Vocal Cord Disorders | moderate / heavy physical Work |
| Respiratory diseases | Rhinitis and obstructive Diseases | |
| Cardiopulmonary Diseases | | **Gynecological restrictions** |
| Neuromuscular Diseases | **Dermatological Diseases** | Pregnant Women |
| Epilepsy | Acne | |
| | Atopic | |

**Figure 5.** Diseases/predispositions with significant risks, according to the literature found, when using masks. Indications for weighing up medical mask exemption certificates.

Example statements made in the paper include the following: "The overall possible resulting measurable drop in oxygen saturation (O2) of the blood on the one hand and the increase in carbon dioxide (CO2) on the other contribute to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase, in some cases also to a significant blood pressure increase." Exhibit iv, p. 25.  In fact, "Neither higher level institutions such as the WHO or the European Centre for Disease Prevention and Control (ECDC) nor national ones, such as the Centers for Disease Control and Prevention, GA, USA (CDC) or the German RKI, substantiate with sound scientific data a positive effect of masks in the public (in terms of a reduced rate of spread of COVID-19 in the population)." Exhibit iv, p. 24.  For these reasons, students who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, or damage.

Also, Plaintiffs note the state of Ohio was given $4,475,243.513 pursuant to the American Rescue Plan ("ARP") Act of 2021 by agreeing to implement the federal guidelines set forth by the CDC.  See the attached letter from the U.S. Secretary of Education, attached hereto as **Exhibit P**.

See also, https://oese.ed.gov/files/2021/07/Ohio-ARP-ESSER-State-Plan-Highlights-v2-

071421.pdf. The letter links to CDC guidelines available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/operation-strategy.html. The guidelines suggest that a school board would forfeit ARP allocations by making masks optional, and states that have prohibited mask mandates in schools have received letter notifying them that they will not receive ARP funds. Accordingly, it seems Defendants have a financial incentive for implementing the mask mandate, despite that such a requirement serves no scientific purpose and subjects individuals who wear masks to the health risks discussed above.

## LAW AND ARGUMENT

The Federal Rules of Civil Procedure permit this Court to issue a temporary restraining order under certain conditions. Specifically, the Rules provide the following:

> **(b) Temporary Restraining Order.**
>
> (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that **immediate** and **irreparable** injury, loss, or damage will result to the movant **before the adverse party can be heard in opposition**; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

Fed. R. Civ. P. 65(b)(1) (emphasis added). "The decision to grant a preliminary injunction requires weighing whether the moving "party (1) 'establish[ed] that he is **likely to succeed on the merits**,' (2) 'that he is likely to suffer **irreparable harm** in the absence of preliminary relief,' (3) 'that the balance of **equities tips in his favor**,' and (4) 'that an **injunction is in the public interest**.'" *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added)). Mich. Educ. Ass'n Family Retired Staff Ass'n v. Mich. Educ. Ass'n (6th Cir. 2021).

Plaintiff Terpsehore Maras, in her own capacity and on behalf of her minor child, P.M., is aggrieved by the immediate and irreparable injury, loss, and damage suffered by P.M. because P.M. is required to wear a mask pursuant to the School Board's mask mandate, which is not only

unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase. Plaintiffs are likely to succeed on the merits, will continue to suffer irreparable harm in the absence of preliminary relief, the balance of requires tip in their favor, and an injunction is in the public interest.

### Violation of Procedural Due Process
### (U.S. Const. amend. V, XIV and OH Const. Art. I, § 16)

In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983. In the instant case, Defendants unquestionably acted under the color of state law. Each Individual Defendant is an elected, voting member of the Mayfield City School District Board of Education with the exception of Defendant Dr. Michael J. Barnes, who is the Superintendent of the Mayfield City School District. Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V. The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV. Similarly, Article 1, § 16 of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law." Article 1, § 16 of the Ohio Constitution affords the people of Ohio with right to be free from violations of the procedural due

13

process rights, and no person may be deprived of life, liberty, or property without due process of law.

Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits. Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally-protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates the Fifth and Fourteenth Amendments of the Unites States Constitution.

### Violation of Substantive Due
### (U.S. Const. amend. XIV and OH Const. Art. I, § 16)

Under the Fourteenth Amendment to the Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment. Similarly, Under Article 1, § 16 of the Ohio Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

### CERTIFICATION OF NOTICE REQUIREMENT

Pursuant to Federal Rule of Civil Procure 65(b)(1)(B), Plaintiff Terpsehore Maras certifies that she informed Defendants twice that she would be suing them – once in her August 21, 2021,

14

email to the Defendants (see Exhibit L) at then again at August 25, 2021 School Board meeting. Therefore, further notice should not be required.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court (i) vacate and set aside the Defendants' mask mandate as well as any other action taken by Defendants to institute the mask mandate and implement the provisions of the mask policy; (ii) declare that the Defendants' masking policy is void and without legal force or effect; (iii) declare that the institution of the mask policy and actions taken by Defendants to implement the mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures; (iv) declare that the mask policy and the actions taken by Defendants to implement the mask policy are in violation of the Constitution and contrary to the laws of the United States and the State of Ohio; (5) temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law; and (6) grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys' fees and costs to Plaintiffs.

Respectfully submitted this 2nd day of September, 2021.

/s/ Terpsehore Maras
410 Superior Ave., #14597
Cleveland, OH 44114
xxx-xxx-xxx      (Telephone)
Terpsehore Maras, Individually and on behalf
of her minor child P.M.

15