**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| P.M., a Minor, By and Through Her Parent, TERPSEHORE MARAS, | : | CASE NO. 1:21 CV 1711 |
| | : | JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs, | : | |
| vs. | : | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND CROSS-MOTION TO DISMISS FOR LACK OF STANDING** |
| MAYFIELD CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al. | : | |
| Defendants. | : | |

**INTRODUCTION**

Plaintiff Terpsehore Maras ("Plaintiff"), seeking to act *pro se* on her daughter's behalf, filed a Complaint against Defendants the Mayfield City School District Board of Education (the "Board"), its Superintendent Dr. Michael J. Barnes (the "Superintendent"), and its members Ron Fornaro, Sue Grozek, Al Hess, George Hughes, and Jimmy Teresi (collectively, "Defendants"). She alleges that the Defendants violated her daughter's "fundamental right to an education" under the Fifth and Fourteenth Amendments of the United States Constitution and Ohio Constitution Article I, § 16 (which provides access to open courts). She alleges that the violation occurred through the institution of a mandatory mask policy for students, staff and visitors to Mayfield schools (the "mask mandate"), which followed recent guidance from multiple sources, including the United States Centers for Disease Control ("CDC"). Plaintiff's lawsuit has no basis in law or fact, and her Motion for Temporary Restraining Order fails to demonstrate either irreparable harm or a likelihood of success on the merits.

Of primary concern, however, is the fact that the Complaint fails as a whole because Plaintiff lacks standing to bring this suit. Under well-settled Sixth Circuit law, a parent may not

bring an action *pro se* on behalf of his/her minor child. *See Shepherd v. Wellman*, 313 F.3d 963, 965 (6th Cir. 2002). This is fatal to Plaintiff's Complaint and therefore also to her Motion.

Even assuming Plaintiff had standing, her scattershot Complaint and Motion fail to meet the elements required for injunctive relief:

1. Plaintiff has no likelihood of success on the merits because the policy at issue was properly adopted, does not violate any fundamental right of Plaintiff's daughter, does not identify any particularized harm, and misunderstands and misapplies both the U.S. and Ohio Constitutions;

2. Plaintiff has not identified any irreparable injury that would occur by maintaining the *status quo* if this litigation proceeds;

3. Plaintiff's requested relief is not in the public interest, it poses a risk of harm to unvaccinated students, teachers and staff in the School District and to the citizens outside the school with whom they come in contact; and

4. the mask mandate is consistent with guidance from sources including the CDC, Ohio Department of Education ("ODE"), Ohio Department of Health ("ODH"), and the American Academy of Pediatrics ("AAP"), and is the most effective method of ensuring continuity of education for the District's students.

This is simply not a situation where a TRO is necessary or appropriate.

### BACKGROUND[1]

The mask mandate is based on best practices and guidance from reputable sources including the CDC, the ODE, ODH, and AAP. It was instituted pursuant to authority granted to the Superintendent and the Board under the Ohio Revised Code and complies with the Board's approved policies.

---

[1] Plaintiff's Motion and Complaint include many extraneous and false allegations that serve no purpose other than to try to demonize the Defendants. While Defendants disagree with most of what was alleged, they will only address factual issues relevant to the TRO request and standard.

### A. The Board's Approved Policies Allow Mask Mandates

Over a year ago, on September 3, 2020, the Board approved Policy No. 8450.01 (the "Policy").[2] That duly enacted policy granted the Board authority to mandate masks for students, staff and visitors during times of elevated communicable disease community spread. (Affidavit of Dr. Michael J. Barnes ("Barnes Aff.") ¶ 4, Ex. 1 (attached as Exhibit A).) The Policy was drafted by counsel for a consortium of school boards and is widely used by districts across the state. (*Id.* ¶ 6.)

The Policy notes that school settings can be a source of community spread, that wearing face masks/coverings is especially important during times of elevated communicable disease community spread and that facial coverings can help mitigate the risk of exposure from person to person. The Policy set a procedure for such actions including mask mandates:

> During times of elevated communicable disease community spread (pandemic or epidemic), the Superintendent will issue periodic guidance through Board of Education plans/resolution(s) in alignment with public health officials and/or in accordance with government edicts and including any Pandemic Plan developed by the District's Pandemic Response Team under Policy 8420.01.
>
> *******
>
> **The Board may require that students shall wear a face mask unless they are unable to do so for a health or developmental reason.** Efforts will be made to reduce any social stigma for a student who, for medical or developmental reasons, cannot and should not wear a mask.

Mayfield City Schools Policy Manual, Policy No. 8450.01 – PROTECTIVE FACIAL COVERINGS DURING PANDEMIC/EPIDEMIC EVENTS (emphasis added).

Notably, the Policy is tailored to address individual issues, including exemptions for students with health and developmental reasons. The School District published a form for

---

[2] The Policy was adopted pursuant to specific statutory provisions granting such authority to local school boards, including Ohio Revised Code sections 3313.20, 3313.60, 3313.661, and 3313.665.

parents to use when requesting exemptions for their children. (Barnes Aff. ¶ 5, Ex. 2.) Plaintiff's Complaint makes no suggestion that she has either sought or been refused an exemption for any reason.

### B. The Board Instituted A Mask Mandate Due To Increased Transmission of COVID-19 After A Multifactor Analysis.

In July 2021, the Ohio Department of Education ("ODE") and Ohio Department of Health ("ODH"), recommended masking for students in the upcoming school year:

> Because children 11 and younger cannot be vaccinated and less than a third of children 12 to 17 are fully vaccinated, it is strongly recommended that schools implement masking for students layered with other prevention strategies to protect people who are not fully vaccinated.

*See* July 21, 2021 COVID-19 Health and Prevention Guidance for Ohio K-12 Schools, available at https://coronavirus.ohio.gov/static/responsible/schools/K-12-Schools-Guidance.pdf (last visited Sept. 8, 2021). ODE and ODH specifically noted that research from the prior school year showed that "wearing masks combined with distancing was effective in slowing the spread of the virus." *Id.*

On August 4, 2021, as the opening of school approached, the Superintendent and Board issued a face mask *recommendation* for all students, staff and visitors. (Barnes Aff. ¶¶ 9-10.) This was consistent with the CDC's guidance at that time, which was "[u]pdated to *recommend* universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status." (Barnes Aff. ¶ 11 (citing https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Sept. 8, 2021).)

Then, on August 5, 2021, the CDC updated its guidance for schools, recommending required universal masking for all students, teachers, faculty, and visitors to schools K-12 regardless of vaccination status:

- 4 -

**Key Takeaways**

- Students benefit from in-person learning, and safely returning to in-person instruction in the fall 2021 is a priority.
- Vaccination is the leading public health prevention strategy to end the COVID-19 pandemic. Promoting vaccination can help schools safely return to in-person learning as well as extracurricular activities and sports.
- Due to the circulating and highly contagious Delta variant, CDC recommends universal indoor masking by all students (age 2 and older), staff, teachers, and visitors to K-12 schools, regardless of vaccination status.
- In addition to universal indoor masking, CDC recommends schools maintain at least 3 feet of physical distance between students within classrooms to reduce transmission risk. When it is not possible to maintain a physical distance of at least 3 feet, such as when schools cannot fully re-open while maintaining these distances, it is especially important to layer multiple other prevention strategies, such as screening testing.
- Screening testing, ventilation, handwashing and respiratory etiquette, staying home when sick and getting tested, contact tracing in combination with quarantine and isolation, and cleaning and disinfection are also important layers of prevention to keep schools safe.
- Students, teachers, and staff should stay home when they have signs of any infectious illness and be referred to their healthcare provider for testing and care.
- Many schools serve children under the age of 12 who are not eligible for vaccination at this time. Therefore, this guidance emphasizes implementing layered prevention strategies (e.g., using multiple prevention strategies together consistently) to protect students, teachers, staff, visitors, and other members of their households and support in-person learning.
- Localities should monitor community transmission, vaccination coverage, screening testing, and occurrence of outbreaks to guide decisions on the level of layered prevention strategies (e.g., physical distancing, screening testing).

(Barnes Aff. ¶ 12 (citing https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Sept. 8, 2021).)

The American Academy of Pediatrics, which had already endorsed mandatory masking, strongly endorsed the CDC's position that universal face mask requirements in K-12 schools was appropriate. (Barnes Aff. ¶ 13.) It noted that children 2 and over can *safely* wear face masks and that the wearing of mask was effective in reducing transmission of COVID and related conditions. It stressed that the masking of all students, teachers and staff – regardless of vaccination status – should be implemented for the 2021-2022 school year. *See* https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/cloth-face-coverings/ (last visited 9.8.2021).

On August 17, 2021, Governor Mike DeWine also encouraged all Ohio school districts to implement mask mandates. (Barnes Aff. ¶ 14 (citing https://www.dispatch.com/story/news/coronaviru s/2021/08/17/covid-ohio-gov-mike-dewine-gives-guidance-back-school/8165776002/ (last visited 9.8.2021).) ODH also continued to recommend wearing masks while indoors to mitigate and lessen the likelihood of quarantine.

(Barnes Aff. ¶ 15.)  In late August 2021, the Cleveland Clinic also sent the School District a letter imploring the School District institute a mask mandate.  *See* August 24, 2021 Letter from the Cleveland Clinic.  (*Id.* ¶ 16.)

On August 20, 2021, pursuant to the Policy and in accordance with the evolving evidence and recommendations, the Superintendent recommended that the District's policy should be changed from a mask recommendation to a mask mandate (subject to the exemptions discussed above). He believed that a mandate applicable to all students, staff, and visitors to school buildings was reasonable and necessary based on increased transmission and incidence of COVID-19 in general and in the schools of other states, as well as the updated/continuing scientific guidance around managing exposure in schools.  (Barnes Aff. ¶¶ 17-26.)

The situation facing schools in particular changed rapidly throughout August with the surge in COVID-19 cases resulting from the Delta variant.  (Barnes Aff. ¶¶ 10-18.)  As Governor DeWine noted in his August 17 press conference (https://ohiochannel.org/video/governor-mike-dewine-8-17-2021-covid-19-update, last visited 9.8.2021), several states of the union had already opened schools without mask requirements and had already experienced school closures as a result of COVID outbreaks.  In other words, the lack of masking threatened the District's ability to remain open for in person learning; Mayfield City Schools could be forced to return to virtual learning as had already occurred in districts in other states.

As a result, to slow the transmission of COVID-19, to protect the health and safety of students, teachers and staff and to avoid as much as possible forcing individual students or entire schools to stop in-person learning, on August 20, 2021, the Superintendent recommended a

mandatory mask requirement for all students, staff, and visitors, regardless of their vaccination status. (Barnes Aff. ¶¶ 17-34.)[3] This decision was, and continues to be, based on several factors.

First, the School District surveyed the parents of students in the School District and the majority of those responding favored a mask mandate. (Barnes Aff. ¶ 19.)

Second, the mask mandate is consistent with guidance from respected, scientific sources described above recommending universal, mandatory mask requirements in schools, including the updated guidance from the CDC. (Barnes Aff. ¶ 12.)

Third, the vast majority (37 of 47) of districts in the area also instituted mask mandates. (Barnes Aff. ¶ 20.) By August 20, that included every district contiguous to Mayfield City Schools. (*Id.*)

Finally, and most important, the mask mandate is the best method to ensure academic continuity for both individual students and schools as a whole. If an unmasked, unvaccinated student is exposed to COVID-19 through close contact with another student who tests positive for COVID-19, that student is required to quarantine (*i.e.*, be out of school) for 10 days, regardless of whether he/she test positive for COVID-19. (Barnes Aff. ¶¶ 21-22 , citing Ohio Department of Health, Guidelines for Quarantine After Exposure in K-12 Classrooms, available at https://coronavirus.ohio.gov/static/responsible/covid-19-fact-sheet-k-12-exposure-and-quarantine.pdf (last visited 9.8.2021)). Depending on the situation, one student testing positive could cause the quarantine of dozens of other students, even entire classes. This is not only disruptive to these students' education because they will all be out of school for weeks, it often also puts a significant strain on families where parents work and cannot easily stay home when a quarantine is required for their children. (Barnes Aff. ¶ 23.)

---

[3] Notably, the Policy may not provide any exception for vaccinated students because the Ohio General Assembly passed legislation prohibiting and discrimination based on vaccination status.

But these serious quarantine risks are significantly reduced where students wear masks because there is no quarantine requirement for exposed students if both students were wearing masks. (Barnes Aff. ¶ 24 (citing COVID-19 Health and Prevention Guidance for Ohio K-12 Schools, available at https://coronavirus.ohio.gov/static/responsible/schools/K-12-Schools-Guidance.pdf (last visited 9.8.2021)); August 31, 2021 ODE Guidance (Exhibit 3 thereto).) Simply put, if all students are masked, there is no mandatory quarantine and no need to miss weeks of in-person learning.

Of equal significance is that the mask mandate is likely to substantially reduce the risk of entire schools (or the entire district) being forced to return to remote learning. As noted above, the occurrence of mass outbreaks and school closures has been shown to be materially related to whether the particular district mandated masks. Thus, the mask mandate is believed to reduce the School District's risk of disruptive quarantines and mass closure of school buildings.

The issue of approving the Superintendent's recommendation of the mask mandate was submitted to the School Board for approval. The mask mandate was included on the agenda for an August 25, 2021 School Board meeting. (Barnes Aff. ¶¶ 28-31.) Parents were given an opportunity to, and did, address the mask mandate during open discussion. (*Id.* ¶ 32.)[4] The Board voted to approve the recommendation. (*Id.* ¶ 33.)

---

[4] *See also* video recording of meeting, https://www.youtube.com/watch?v=zt4f6SO-hkA, last visited 9.8.2021. While irrelevant to the TRO standard, Plaintiff claims, incorrectly, that her concerns regarding the mask mandate were ignored and her papers suggest that she was silenced at a school board meeting. This is simply not true. Plaintiff spoke for approximately 5 minutes (from approximately 1:21:30 through 1:26:54 of the recording), expressing her strong disagreement with the mask mandate, rejecting any decision-making authority of the Board and informing them that she was going to "remove them all."

## **LAW & ARGUMENT**

### II. PLAINTIFF LACKS STANDING TO ASSERT A CLAIM ON HER DAUGHTER'S BEHALF *PRO SE*.

Plaintiff seeks to assert 42 U.S.C. Section 1983 claims on behalf of her minor daughter, claiming injury to her daughter resulting from the School District's mask mandate.[5] The signature block on the Complaint does not identify any bar number or affiliation. A check of the Ohio Supreme Court on-line attorney directory shows no registered attorney with Plaintiff's name.

Because Plaintiff is not an Ohio-licensed attorney (or likely an attorney at all), she is prohibited from asserting a claim *pro se* on her daughter's behalf. This alone requires denial of Plaintiff's TRO Motion and dismissal of the Complaint.

It is well-settled in the Sixth Circuit that a parent cannot appear *pro se* on behalf of his/her minor child. *See Shepherd v. Wellman*, 313 F.3d 963, 965 (6th Cir. 2002). In *Shepherd*, after the decedent was killed by police, the mother of the decedent's son filed a 1983 claim against the police department on behalf of her and the decedent's son alleging, among other things, loss of consortium. 313 F.3d 963, 965 (6th Cir. 2002). The court held that "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Id.* at 970-71.

This rule has been applied several times since *Shepherd*, including in a May 2021 decision originating from this Court. *See, e.g.*, *Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005) (the law does "not permit parents to serve as legal counsel for their minor child's cause of action"), *abrogated in part on other grounds*, *Winkelman v. Parma City Sch. Dist*, 550 U.S. 516, 535, 127 S. Ct. 1994, 167 L. Ed. 2d 904; *Moses v. Gardner*, Case No.

---

[5] Nor does Plaintiff attempt to identify any injury to herself personally.

15-5971, 2016 U.S. App. LEXIS 23993, *3 (6th Cir. May 24, 2016) (explaining that the "district court should have dismissed [parent]'s claim without prejudice" because a parent cannot appear *pro se* on behalf of a child); *Chukwuani v. Solon City. Sch. Dist.*, No. 19-3574, 2020 U.S. App. LEXIS 12863, *4 (6th Cir. Apr. 21, 2020) (explaining that the Sixth Circuit has consistently held that parents are prohibited "from appearing pro se on behalf of their minor child"); *McCoy v. Akron Police Dep't,* Case No. 5:21-cv-51, 2021 U.S. Dist. LEXIS 88484, *2-3 (N.D. Ohio May 10, 2021) (dismissing 1983 action because "while a parent may technically bring suit on behalf of a minor child, he or she may not do so *pro se*—that is, the parent can only bring suit on behalf of the minor child through an attorney"); *Combs v. Toledo Pub. Sch.*, No. 3:06 CV 2070, 2007 U.S. Dist. LEXIS 71942, at *7 (N.D. Ohio Sep. 27, 2007); *Smith v. Indian Hill Exempted Vill. Sch. Dist.*, No. 1:10-cv-718, 2011 U.S. Dist. LEXIS 108162, at *18 (S.D. Ohio May 5, 2011) (holding that a parent does not have standing to bring a 42 U.S.C. § 1983 civil rights claim on behalf of a minor child).

Accordingly, the Court should dismiss the Complaint because she lacks standing to assert claims *pro se* on her daughter's behalf and deny Plaintiff's Motion as moot.

**III.   PLAINTIFF CANNOT SATISFY THE ELEMENTS OF A TRO.**

Even if Plaintiff had standing to sue the School District, her claims fail all four prongs of the standard for obtaining a TRO: (1) whether the movant has demonstrated a likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the injunction will cause substantial harm to others if it is issued; and (4) whether granting the injunction will serve the public interest. *See Tenn. Scrap Recyclers Ass'n.* v. *Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009). Plaintiff must provide clear and convincing evidence of each of these factors. *Garlock, Inc. v. United Seal*, 404 F.2d 256, 257

(6th Cir. 1968). Plaintiff does not even address most of these elements. Her Complaint and Motion fall woefully short of meeting this heightened requirement.

    **A.**    **Plaintiff Has No Hope of Success on the Merits.**

        1.    <u>The Board Properly Instituted A Mask Mandate Pursuant To Its Previously Adopted Policies.</u>

As described above, the School District had in place a policy that allowed the Superintendent and the School Board to institute policies regarding wearing protective facial coverings due to increased community spread of infectious diseases prior to the current surge in COVID-19 cases. Mask mandates were specifically contemplated:

> **<u>The Board may require that students shall wear a face mask unless they are unable to do so for a health or developmental reason.</u>** Efforts will be made to reduce any social stigma for a student who, for medical or developmental reasons, cannot and should not wear a mask.

Mayfield City Schools Policy Manual, Policy No. 8450.01 – PROTECTIVE FACIAL COVERINGS DURING PANDEMIC/EPIDEMIC EVENTS (emphasis added). That Policy was approved and implemented over a year ago.

The Board adopted the Policy pursuant to the authority granted to it under the Ohio Revised Code to set rules and policies necessary for "its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises;" to set curriculum; to set policies regarding suspension, expulsion, removal, and permanent exclusion; and to set a code of conduct or discipline policy to promote a safe and healthy school setting, including dress codes. *See* R.C. 3313.20, 3313.60, 3313.661, 3313.665.

As also described above, the Board followed all applicable policies in approving the Superintendent's recommendation. Plaintiff cannot demonstrate any violation of procedure at all, let alone procedural due process, sufficient to sustain a 1983 claim.

> 2. The Mask Mandate Does Not Deprive Plaintiff's Daughter of Any Fundamental Rights.

The Due Process Clause of the Fourteenth Amendment states that "no State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amd. XIV. To establish a violation of the Fourteenth Amendment, a plaintiff must show "the existence of a liberty or property interest of which he was deprived by the defendant." *Bd. Of Trs. Of Sabis Int'l School v. Montgomery*, 205 F.Supp.2d 835, 850 (S.D. Ohio 2002) (dismissing claims by board of trustees reasoning they could not enforce students' rights and had failed to identify any recognized property interest of which they were actually deprived); *see also Daniels v. Woodside*, 396 F.3d 730, 736 (6th Cir. 2005) ("Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . ." (internal quotations omitted)); *Lany v. Farley*, 501 F.3d 577, 583-84 (6th Cir. 2007) (one-day in school suspension was a *de minimis* deprivation of liberty interest and, therefore, the Due Process Clause was not implicated).

This not a situation where Plaintiff's daughter is being deprived of a fundamental right or recognized liberty or property interest. Plaintiff claims that her daughter's right to a (1) safe and healthy (2) public education has been violated. That is objectively not the case and Plaintiff, tellingly, does not explain how the Policy denies her daughter a right to a safe public education.

The mask mandate does not prevent Plaintiff's daughter from receiving an education. She may attend school so long as she complies with school rules and guidelines (including the mask mandate). Plaintiff has not identified any way in which her daughter is prohibited from attending school. In fact, as discussed below, she has not identified any way in which her

daughter is harmed at all.[6] *See Resurrection School v. Hertel*, No. 20-2256, 2021 U.S. App. LEXIS 25349, at *33-51 (6th Cir. Aug. 23, 2021) (affirming denial of injunctive relief sought in lawsuit challenging mask mandate in schools, reasoning that mask mandate did not violate the plaintiff children's free exercise of religion, equal protection, or substantive due process rights); *Doe v. Ohio State Univ.*, No. 2:15-cv-2830, 2016 U.S. Dist. LEXIS 52942, at *9 (S.D. Ohio Apr. 20, 2016) (affirming Magistrate Judge's decision denying preliminary injunction, reasoning that [i]n the absence of a constitutional violation, the Court can again only conclude that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits to weigh in favor of his request for a preliminary injunction").

### B. Plaintiff Has Not Alleged A Particularized Constitutional Harm, Let Alone Irreparable Harm.

Plaintiff's claim is both unlikely to succeed on the merits and fails to identify irreparable injury because she has not identified a constitutional violation or any harm to her daughter. At best, her argument is that masks are unnecessary or not protective. But that is not the same as being harmful. And without particularized harm, or a violation of some constitutional right, there can be no claim under 1983 (and no jurisdiction in this Court). *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (holding that a 1983 claim failed because the plaintiff did not allege personal harm, but rather sought compensation for alleged personal losses and suffering

---

[6] Plaintiff also purports to bring claims pursuant to Ohio Constitution, Article I, § 16. That provision simply provides protection to individuals who otherwise have claims with access to the Ohio state courts:

> All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

Ohio Const. Art. I, § 16. While this section has been used to invalidate certain legislative impairments of existing rights (*see, e.g.*, *Sedar v. Knowlton*, 49 Ohio St. 3d 193, 199-200 (1990), *rev'd on other grounds*) it does not create a substantive claim. Plaintiff does not identify how the mask mandate violates any substantive Ohio law or how the mask mandate prevents her from seeking redress in the Ohio courts. Thus, she has no claim pursuant to Ohio Constitution Article I, §16.

experienced by the decedent's children reasoning that "[i]n the Sixth Circuit, a Section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort"); *Hoffman v. Tenn. Dep't of Children Servs.*, No. 3:20-cv-00900, 2020 U.S. Dist. LEXIS 221001, at \*6 (M.D. Tenn. Nov. 24, 2020) (holding that a parent could not bring a 1983 claim against a foster home for the assault of their child because the parent's civil rights were not violated).

A Plaintiff seeking injunctive relief must not only prove harm, she must prove *irreparable* harm. *McGee* v. *Armstrong*, 2011 WL 6756256, at \*4 (N.D. Ohio Dec. 23, 2011) ("Even if plaintiff were able to show likelihood of success on the merits, for a TRO to issue (in order to maintain the status quo), he must also show that he will suffer irreparable harm absent immediate injunctive relief."). While Plaintiff's Complaint and Motion make various, vague references to alleged harms associated with masks, there is not a single allegation that Plaintiff's daughter falls into the category of individuals for whom masks may be harmful. Plaintiff does not, for example, claim that her daughter has a medical condition that would make wearing a mask unsafe, nor does Plaintiff assert that her daughter should not wear a mask due to cognitive or developmental concerns. *Indeed, if wearing a mask were harmful to Plaintiff's daughter, the policy provides a specific exemption.* But she has not sought one.

Rather, Plaintiff's primary argument, and the thrust of the Stephen Petty affidavit attached to the Motion, is that masks are ineffective to stop the spread of COVID-19. But that is not the same as causing an injury, let alone an irreparable injury. Plaintiff's Complaint and Motion are devoid of any suggestion as to how her daughter is harmer, or how that harm is irreparable. Having identified no irreparable injury, Plaintiff is not entitled to a TRO.

    **C.**    **Granting a TRO Would Pose A Risk Of Harm To Other Students and Is Against The Public Interest.**

The third and fourth TRO factors also favors denying Plaintiff's requested relief. The

mask mandate was instituted after considering many factors, including current thinking by the CDC, the Cleveland Clinic, and the Ohio Departments of Education and Health, all of which recognize that wearing masks combined with social distancing are effective in reducing the spread of COVID-19.  This is particularly important for children under the age of 12 who are not yet eligible to be vaccinated and who show increasing risks of being susceptible to COVID infection, of hospitalization and even long-term effects after recovery from the infection.

As described above, if the mask mandate is removed, the risk of infection increases for other students, teachers, staff and all those they come in contact with.  It also increases the risk that individual students are quarantined or that entire classes or school buildings are forced back to remote learning if there is not sufficient staff due to illness and quarantine restrictions.  Thus, the proposed injunction poses a risk of harm to others and is definitively not in the public interest.  These risks are counterposed to Plaintiff's apparent desire that her daughter not be bothered by wearing a mask at school.  Clearly, the balance of harms weighs overwhelmingly against issuing an injunction.

## CONCLUSION

The mask mandate was a reasonable policy decision made to protect students in the School District in light of elevated transmission of the COVID-19.  Granting the TRO would unnecessarily subject the students and public to a health risk and subject children throughout the School District to an elevated risk of being forced back into remote learning.  If the Court does not dismiss the case, it should deny the Motion, maintain the status quo of the mask mandate while this dispute is litigated.

    Respectfully Submitted,

    */s/ Thomas L. Feher*
    Thomas L. Feher (#0038575)

        Tom.Feher@ThompsonHine.com
        **THOMPSON HINE LLP**
        3900 Key Center
        127 Public Square
        Cleveland, Ohio 44114
        Phone: (216) 566-5500
        Fax: (216) 566-5800

        Stephanie M. Chmiel (#0087555)
        Stephanie.Chmiel@ThompsonHine.com
        **THOMPSON HINE LLP**
        41 South High Street, Suite 1700
        Columbus, Ohio 43215
        Phone: (614) 469-3200
        Fax: (614) 469-3361

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2021, a copy of the foregoing **Memorandum in Opposition to Motion for Temporary Restraining Order and Cross-Motion to Dismiss** was filed electronically with the United States District Court for the Northern District of Ohio. Notice will be sent to the parties by operation of the Court's electronic filing system.

*/s/ Thomas L. Feher*
*One of the Attorneys for Defendants*