

**FILED**

OCT 2 9 2021

Clerk of Court, United States District Court
Ohio Northern District - CLEVELAND

P.M., a Minor, By and Through Her Parent,
TERPSEHORE MARAS,

    Plaintiffs,

vs.

MAYFIELD CITY SCHOOL DISTRICT
BOARD OF EDUCATION, et al,

    Defendants.

Case No: 1:21-CV-1711

Hon. Solomon Oliver, Jr., U.S.D.J.

---

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

---

Plaintiff Terpsehore Maras
410 Superior Ave., #14597
Cleveland, OH 44114
Tel: (503) 430-0000
mayfieldparentsunion@gmail.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................I

TABLE OF AUTHORITIES ....................................................................................................II

STATEMENT OF ISSUES .....................................................................................................1

SUMMARY OF ARGUMENTS ..............................................................................................2

FACTUAL BACKGROUND ....................................................................................................3

ARGUMENT .......................................................................................................................5

POINT I ............................................................................................................................5

PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE FEDERAL CLAIMS BASED ON DEFENDANTS'

VIOLATION OF 42 U.S.C. § 1983 AND THE U.S. CONSTITUTION .............................................5

    *1.    Plaintiff has standing to bring this action seeking injunctive relief as against all Defendants ...............6*

    *2.    Plaintiff properly asserts a 42 U.S.C. § 1983 claim given the facts alleged in the Amended Complaint*

    *demonstrate state actors have violated numerous Federal constitutional rights belonging to Plaintiff.........11*

        *a.    Plaintiff has a procedural due process right that was violated ..........................11*

        *b.    Plaintiff has substantive due process rights that were violated..........................12*

        *c.    Plaintiff has a Ninth Amendment right that was violated..................................19*

        *d.    Plaintiff has a Tenth Amendment right that was violated .................................21*

POINT II ..........................................................................................................................23

PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE STATE CLAIMS BASED ON DEFENDANTS' VIOLATION

OF ARTICLE I, SECTIONS 16 AND 21 OF THE OHIO CONSTITUTION ...........................................23

    *1.    Defendants are in violation Plaintiff's procedural and substantive due process rights under the Ohio*

    *Constitution..........................................................................................................23*

    *2.    The Ohio Health Care Amendment bars the Wildcat Health Care System ...........................24*

CONCLUSION ...................................................................................................................26

# TABLE OF AUTHORITIES

**CONSTITUTIONAL PROVISIONS**

Ohio Const. Art. 1, § 16 .................................................................................................. 24

Ohio Const. Art. I, § 21 .......................................................................................... 9, 24, 25

U.S. Const. Amend. IX ...................................................................................................... 19

U.S. Const. Amend. V ....................................................................................................... 12

U.S. Const. Amend. X ....................................................................................................... 21

U.S. Const. Amend. XIV ................................................................................................... 12

**CASES**

*Anders v. Cuevas*, 984 F. 3d 1166 (6th Cir. 2021) ........................................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 6

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ........................................................... 8

*Cahoo v. SAS Analytics Inc.*, 912 F. 3d 887 (6th Cir. 2019) ........................................... 12

*Campbell v. Nationstar Mortg.*, 611 F. App'x 288 (6th Cir. 2011) ................................ 11

*Canterbury v. Spence*, 464 F. 2d 772 (D.C. Cir.), *cert. denied*, 409 U. S. 1064 (1972) .................. 16

*Carl v. Muskegon Cnty.*, 763 F.3d 592 (6th Cir. 2014) .................................................. 11

*Chiafalo v. Washington*, 140 S. Ct. 2316 (2020) ........................................................... 23

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .............................. 16

*Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974) ................................................ 13

*Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261 (1990) ..................................... 15

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, No. 21-2945, Slip Op. (6th Cir. October 7, 2021) ................ 7

*Downer v. Veilleux*, 322 A. 2d 82 (Me. 1974) ............................................................... 16

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) .............................. 8

*Gibson v. Matthews*, 926 F. 2d 532 (6th Cir. 1991) ...................................................... 19

*Goss v. Lopez*, 419 U.S. 565 (1975) ................................................................................ 9

*Griswold v. Connecticut*, 381 U. S. 479 (1965) ........................................................ 20, 21

*Hartford Fire Ins. v. Lawrence, Dykes, Goodenberger*, 740 F. 2d 1362 (6th Cir. 1984) ............... 24

*Hodge v. Jones*, 31 F.3d 157 (4th Cir. 1994) ................................................................. 14

*Honig v. Doe*, 484 U.S. 305 (1988) ................................................................................ 10

*Hybud Equipment Corp. v. City of Akron, Ohio*, 654 F. 2d 1187 (6th Cir. 1981) ........................... 22

*Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396
(6th Cir. 2019) ................................................................................. 7, 9, 17, 19, 26

*Lany v. Farley*, 501 F.3d 577 (6th Cir. 2007) ................................................................ 9

*League of United Latin Am. Citizens v. Bredesen*, 500 F. 3d 523 (6th Cir. 2007) ......................... 11

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ................................................................. 14

*Mills v. Rogers*, 457 U. S. 291 (1982) .................................................................. 15

*Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003) ................................... 11

*Moore v. City of E. Cleveland*, 431 U.S. 494 (1977) ...................................................... 13

*Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461 (2018) ............................ 23

*Natanson v. Kline*, 186 Kan. 393, 350 P. 2d 1093 (1960) ................................................ 16

*NRA of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................................................... 10

*Parham v. J. R.*, 442 U. S. 584 (1979) ................................................................. 13

*Pierce v. Society of Sisters*, 268 U. S. 510 (1925) ..................................................... 14

*Prince v. Massachusetts*, 321 U.S. 158 (1944) ......................................................... 14

*Printz v. United States*, 521 U.S. 898 (1997) ........................................................... 23

*Quilloin v. Walcott*, 434 U. S. 246 (1978) .............................................................. 13

*Resurrection School v. Hertel*, No. 20-2256, Slip Op. (6th Cir. Aug. 23, 2021) ............................. 17

*Roe v. Wade*, 410 U.S. 113 (1973) ...................................................................... 21

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ..................................... 10, 18

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228 (W.D. Mo. 2020) .......... 8

*Russ v. Watts*, 414 F. 3d 783 (7th Cir. 2005) ........................................................... 14

*Seal v. Morgan*, 229 F.3d 567 (6th Cir. 2000) ........................................................... 18

*Stanley v. Illinois*, 405 U.S. 645 (1972) ............................................................... 14

*Sullivan v. Benningfield*, 920 F.3d 401 (6th Cir. 2019) ................................................. 10

*Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999) ................................................... 14

*Troxel v. Granville*, 530 U.S. 57 (2000) ................................................................ 12

*Tune v. Walter Reed Army Medical Hospital*, 602 F. Supp. 1452 (D.C. 1985) ............................. 16

*Union Pacific R. Co. v. Botsford*, 141 U. S. 250 (1891) ................................................. 16

*Washington v. Glucksberg*, 521 U.S. 702 (1997)........................................................................ 12, 15

*Winkelman v. Parma City School Dist.*, 127 S. Ct. 1994 (2007) ...................................................... 13

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)................................................................................. 13

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ................................................................................. 18

## STATUTES

21 U.S.C. § 321(h).......................................................................................................... 4

28 U.S.C. § 1915(d)......................................................................................................... 1

42 U.S.C. § 1983 ....................................................................................................... 2, 11

Ohio Rev. Code § 119.01(C) ............................................................................................... 9

## OTHER AUTHORITIES

James Madison, "The Report of 1800", January 7, 1800................................................................. 1

## RULES

Fed. R. Civ. P. 15(a)(2) .................................................................................................. 11

## STATEMENT OF ISSUES

*"The people, not the government, possess the absolute sovereignty."*
*James Madison*[1]

Plaintiff's *pro se* Complaint may be inartful in certain sections but nevertheless withstands Defendants' challenges and should proceed towards discovery. Relying on her Amended Complaint, Plaintiff Terpsehore Maras ("Plaintiff") now only asserts her own constitutional rights as a parent. She respectfully requests that the Court dismiss her daughter as a named party. By proceeding as the sole Plaintiff, she can still protect her daughter given the symbiotic nature of their claims.[2]

The pending motion can easily have a swift resolution if the Court applies the Supreme Court authority cited in this memorandum and is not distracted by the unfortunate filing lobbed at a *pro se* litigant. In all candor, the Court respectfully need only read one specific Sixth Circuit decision that unequivocally describes Plaintiff's fundamental constitutional right to make

---

[1] James Madison, "The Report of 1800", January 7, 1800, at 20 ("The people, not the government, possess the absolute sovereignty. The legislature, no less than the executive, is under limitations of power. Encroachments are regarded as possible from the one, as well as from the other. Hence in the United States, the great and essential rights of the people are secured against legislative, as well as against executive ambition. **They are secured, not by laws paramount to prerogative; but by constitutions paramount to laws.**") (emphasis added).

[2] The pursuit of her own constitutional claims has the impact of also protecting her daughter. And, given that her minor child P.M. cannot assert constitutional claims on her own behalf and Plaintiff does not believe cross-moving for the appointment of counsel will be assist in moving this matter forward, the claims brought by P.M. as a named party should respectfully be dismissed without prejudice. *See* 28 U.S.C. § 1915(d) ("a district court has discretion to appoint counsel for an indigent civil litigant.").

healthcare decisions on behalf of her minor daughter. Given there are well-pled allegations regarding the harm and lack of efficacy in the standard 3-ply surgical masks – the type of masks the FDA classifies as class 2 medical devices and are readily used in the Mayfield City School District ("MCSD"), discovery is appropriate to determine whether Defendants' mask mandate is sufficiently narrowly tailored to comply with the Federal and Ohio Constitutions.

## SUMMARY OF ARGUMENTS

As the mother of P.M., Plaintiff is empowered to assert her own fundamental constitutional rights. Her Federal claims ultimately spring from the Ninth, Tenth, and Fourteenth Amendments of the U.S. Constitution and the enforcement vehicle of 42 U.S.C. § 1983. Plaintiff's well-pled Amended Complaint outlines the procedural and substantive due process defects subject to the Fourteenth Amendment associated with Defendants' mask mandate. Given Defendants' status as state actors, these Due Process Clause violations give rise to a Federal statutory claim under 42 U.S.C. § 1983. Under the authority of longstanding Supreme Court precedent, Plaintiff can also assert fundamental liberty rights as regards the upbringing of her daughter derived from the Ninth Amendment given such rights are deeply rooted in the traditions and conscience of our people as to be ranked as fundamental. Given various Federal coercive inducements that pushed Defendants to issue their mask mandate – including significant financial inducements, Plaintiff also has a claim under the Tenth Amendment. Nowhere is there any requirement in the Sixth Circuit that Tenth Amendment violations can only be asserted against the Federal Government. And finally, Plaintiff also has claims under the Ohio Constitution given due process violations and a claim based on Defendants' creation of a mandatory health care system.

-2-

## FACTUAL BACKGROUND

Defendants correctly point out that when ruling on this motion, the Court should construe the complaint in a light most favorable to Plaintiff and **accept as true** all factual allegations. Defs. Mem. 6. Unfortunately, they have ignored their own standard by completely disregarding Plaintiffs' factual presentation as set forth in the Amended Complaint.

P.M. attends high school in the MCSD and Plaintiff Terpsehore Maras ("Plaintiff") is her mother. Plaintiff's Amended Complaint ("PAC") ¶¶ 1 – 2. Named Defendants are all state actors given they consist of a public entity and duly elected or appointed public officials. PAC ¶¶ 3 – 10, 18, 29, 56. These state actors had certain process and procedures in place during all relevant times, including a requirement they "carry out its functions openly, while seeking the involvement and contributions of the Public, students, and staff in its decision-making processes." PAC ¶ 28. The MCSD Policy Manual also recognizes as applicable guidance: "careful and orderly process is used when examining policy proposals prior to Board action." PAC ¶ 31. On April 22, 2020, the MCSD Board passed a resolution suspending all "community communications/public comments section of its regular meeting agendas until the COVID-19 emergency ceases" PAC ¶ 36, PAC Exh. "H". This was done despite the ability to hold remote meetings given an emergency measure passed by the General Assembly. PAC ¶ 35. No prior notice to parents was sent out prior to this decision to suspend all public comments.

Recognizing that face masks are medical devices, the MCSD Board Policy first took the position: "Facial masks/coverings generally should not include surgical masks or respirators **unless medically indicated (as those should be reserved for healthcare workers)** . . . ." PAC ¶

33, PAC Exh. "F" (emphasis added).[3] On an ongoing basis, MCSD Board Policies reference Federal Centers for Disease Control and Prevention ("CDC ") guidance, including its recommendation that everyone wear a mask in indoor settings. *Id.* On August 4, 2021, Defendants issued a mask "recommendation". PAC ¶ 37 ("Face masks in grades Pre-K-12 are strongly recommended for our students, teachers and staff. . . . It is your right to wear or not wear a face mask. **We support either decision**. Please be respectful of the choice of our students, teachers and staff.") (emphasis added). Shortly thereafter, that recommendation became a **mandate** for younger students and then on August 21, 2021, Defendant Dr. Michael J. Barnes emailed parents a letter, dated August 20, 2021, changing Defendants' mask position from a "recommendation" to a "mandate" for all students **without any prior input from parents**. PAC ¶ 38, PAC Exh. "K".

Defendants' mandate was passed despite well-documented proof that an "all day" masking requirement is neither effective at stopping the spread of SARS-CoV-2 – the virus particle that causes COVID-19, nor is it safe given the short-term and long-term harm to students. PAC ¶ 49, PAC Exh. "O" (sword affidavit of Stephen E. Petty – an expert in the field of

_____

[3] Defendants' recognition is well founded. Section 201(h) of the Federal Food, Drug, and Cosmetic Act states that a medical device is "any instrument, machine, contrivance, implant, in vitro reagent that's intended to treat, cure, prevent, mitigate, diagnose disease in man or other animals." 21 U.S.C. § 321(h). Given 3-ply surgical masks are used to prevent a disease, they are medical devices. In fact, the FDA categorizes commonly used 3-ply surgical masks as a "Class 2" medical device. Maras Decl., Exh. "L". And, this FDA designation is recognized by the Occupational Safety and Health Administration: "Surgical masks are typically cleared by the U.S. Food and Drug Administration as medical devices and are used to protect workers against splashes and sprays (*i.e.*, droplets) containing potentially infectious materials." Maras Decl. ¶ 33.

Industrial Hygiene who has been qualified as an expert witness in approximately 400 cases involving personal protective equipment and related disciplines).[4] *See also* Declaration of Terpsehore Maras in Opposition to Motion to Dismiss, dated October 29, 2021 ("Maras Decl."), ¶¶ 8 – 27; Exh. "A" (Florida Order). Mr. Petty explains how COVID-19 is transmitted via aerosol particles that linger in the air for days so the only effective means of control in an indoor setting is via dilution, destruction or containment – which is also why facial coverings provide no protection. PAC ¶ 49 at 21 – 22. Most importantly, mask usage is harmful to students. PAC ¶ 49 at 23 – 25; Maras Decl. ¶¶ 8 – 27; Exh. "A".

Defendants' mandating students wear medical devices that are neither effective nor safe ignores the Federal and Ohio Constitutions and is contrary to the longstanding tradition of parents deciding their children's health care in consultation with their personal physicians and after doing their own research. This Court should respectfully not turn a blind eye to this ugly reality no matter how many televisions ads and billboards coerce folks into "masking up".

## ARGUMENT

### POINT I
### PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE FEDERAL CLAIMS BASED ON DEFENDANTS' VIOLATION OF 42 U.S.C. § 1983 AND THE U.S. CONSTITUTION

In suggesting that Plaintiff has no viable constitutional claim, Defendants ignore binding

---

[4] Despite being handed to the Clerk in person on October 1, 2021, the latest Petty Affidavit – which is referenced extensively in the Amended Complaint, was not filed by the Clerk as of October 28, 2021. Maras Decl. ¶ 27.

authority. *See e.g.*, Defs. Mem. 2 (arguing that the Amended Complaint contains "no allegation of any recognized Constitutional violation or injury."); *Id.* at 7 (stating as fact Plaintiff "is not being deprived of a fundamental right or recognized liberty or property interest."); *Id.* at 9 ("[N]owhere in Counts I or II does Plaintiff identify any protected property or liberty interest or injury of her own. . . . The Amended Complaint does not allege any facts plausibly suggesting that requiring her daughter to wear a mask while on school grounds violates any fundamental right personal to Plaintiff."); *Id.* at 11 (arguing that Article I, Section 21 of the Ohio Constitution "requires that there be a civil or criminal penalty, fine or surcharge for failure to comply with the law.").

Defendants also ignore that the appropriate motion standard is very forgiving. The applicable "plausibility standard" is certainly not akin to a "probability requirement". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Anders v. Cuevas*, 984 F. 3d 1166, 1175 (6th Cir. 2021) (same) (reversing dismissal of a constitutional claim). Simply put, this is not a motion for summary judgment where evidence is given some level of weight – the test here is whether well-pled allegations give rise to plausible claims.[5] Nothing more is needed, and such standard is respectfully met in this case.

### 1. Plaintiff has standing to bring this action seeking injunctive relief as against all Defendants

Defendants misconstrue Plaintiff's grounds for standing and mistate what **relief** Plaintiff

---

[5] For example, by acknowledging that the intended purpose of their mask mandate is "to reduce transmission of viruses", Defendants create an issue of material fact regarding the tailoring of their mask mandate that cannot be decided on a motion for summary judgment let alone on a motion to dismiss. Defs. Mem. 3.

seeks — which is most certainly not the relief suggested by Defendants. Defendants argue that "Plaintiff has not identified any **compensable injury** that she or her daughter will suffer under any of these theories a [sic] result of the mask mandate." Defs. Mem. 2 (emphasis added). *See also Id*. at 9 – 10 (citing cases where plaintiffs are "seeking compensation"). By incorrectly couching the relief sought as money damages, Defendants deliberately or unintentionally cite inapplicable caselaw. Plaintiff is not seeking **any** compensation for damages. Accordingly, the applicable law does not require Plaintiff's minor daughter "actually experience" physical harm before Plaintiff can obtain relief. Defs. Mem. 4. By way of her Amended Complaint, Plaintiff only seeks injunctive relief to prevent **ongoing and future harm**. *See Kanuszewski v. Mich. Dep't of Health & Human Servs*., 927 F.3d 396, 406 (6th Cir. 2019); PAC, Prayer for Relief.

Indeed, Defendants' entire view regarding standing and its "harm" requirement is unfortunate. They apparently do not even suppose for a minute that wearing masks all day long might harm students or that they were wrong regarding priorities by focusing on masks when they should have instead devoted all their efforts on modifying the existing ventilation systems for MCSD schools. Indeed, Defendants go so far as to disparage the well-qualified Petty affidavit — written by **an expert in 400 cases**, claiming its analysis only points to a "potential risk" and a "speculative fear" of harm. Defs. Mem. 8.

The constitutional violations set forth in the Amended Complaint more than adequately satisfies the Article III standing requirement improperly conflated by Defendants into the need to show existing physical harm. As recognized by the Sixth Circuit when addressing a college's COVID-19 vaccine mandate, the alleged violation of a constitutional right *ipse dixit* satisfies the harm requirement given it goes so far as to demonstrate **irreparable harm**. *Dahl v. Bd. of Trs.*

*of W. Mich. Univ.*, No. 21-2945, Slip Op. * at 10 (6th Cir. October 7, 2021) ("Enforcement of the University's [COVID-19 vaccine mandate] policy likely would deprive plaintiffs of their First Amendment rights, an irreparable injury.") (citations omitted). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (recognizing that if "a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated.").

Defendants' pinched perspective also ignores how this pandemic played out and why school board decisions involving a child's health – decisions that may cause an adverse impact long after enacting bandwagon board members are replaced with science-conscious members, should never be made outside the purvey of parents. *See e.g., Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1243 (W.D. Mo. 2020) (recognizing that "guidance on COVID-19 is continuously evolving and changing."). By offering "medical exemptions" to their mask mandate, Defendants demonstrate that they are apparently oblivious to the fact their mask mandate **may itself cause illness**. *See* Defs. Mem. 8, n. 6 ("[I]f Plaintiff provided evidence from a doctor that she risked any such adverse physical consequence, she could obtain an exemption from the mask mandate."). Again, the arrogance here is breathtaking. Defendants never once consider that an "adverse physical consequence" may be caused by long-term mask usage.

Defendants also sarcastically suggest Plaintiff has no right to bring suit given "Plaintiff is not a student and is not pursuing an education." *Id.* at 9. Plaintiff is the mother of P.M. and as such is entitled to injunctive relief based on decisions that have been **completely ignored** by

Defendants. For example, in *Kanuszewski,* the Sixth Circuit found that "Plaintiffs have standing to seek prospective relief for the alleged **ongoing violation of the children's rights.**" *Kanuszewski, supra,* 927 F.3d at 416 (emphasis added).

In arguing for dismissal of this matter, Defendants also argue a classic straw man suggesting that a possible school suspension does not create a constitutional injury. They even cite a Sixth Circuit case for their rule: "[A] short school suspension was *de minimis* deprivation of liberty and, therefore, the Due Process Clause was not implicated." Defs. Mem. 6 (*citing Lany v. Farley,* 501 F.3d 577, 583-84 (6th Cir. 2007)). In that case, however, the Sixth Circuit found that "a **one day in-school** suspension to be a *de minimis* deprivation." *See Lany, supra,* 501 F. 3d. at 584 (emphasis added). Interestingly, Defendants reference a Supreme Court case **applying Ohio law** and a student's "property right" in an education – **a case that ruled in favor of the parents**, but even that case is a distraction. *See* Defs. Mem. 7 (*citing Goss v. Lopez,* 419 U.S. 565 (1975)).

P.M. has not and will not likely be suspended from school **during the pendency of this matter**. Defendants have apparently very carefully kept their powder dry and will only issue P.M. a school suspension after this Court rules in a manner they fully expect – why else would Defendants go "all in" by deflecting with a "property interest" argument and file papers that deliberately or mistakenly omits key applicable law **against a *pro se* litigant.**[6] What is certain,

---

[6] One key glaring "mistake" is when Defendants write: "Article I, § 21 precludes a 'federal, state, **or local law'** that "compel[s]" an individual to participate in a 'health care system.' . . . First, the mask mandate is not a local law." Defs. Mem. 11 (emphasis added) (*citing* Ohio Const. art. I, § 21(A)). The full and accurate recitation of the relevant constitutional passage reads: "No federal, state, or local law *or rule*". *See* Ohio Const. Art. I, § 21 (emphasis added). A voted upon School Board Resolution may not be a "local law" but surely fits under the broad banner

however, is that if a suspension occurs it will not be a "one day" suspension and it most certainly will not be "in-school" as done in Defendants' cited case.

This case is most certainly not solely based on the loss of a property right. And, given that an unconstitutional act is at issue, "one does not have to await the consummation of threatened injury to obtain preventive relief." *NRA of Am. v. Magaw*, 132 F.3d 272, 286 (6th Cir. 1997). *See c.f.*, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (recognizing that "in a pandemic, the Constitution cannot be put away and forgotten."). All that is necessary is that there is a "reasonable expectation" that a constitutionally offensive policy will be enforced. *See Honig v. Doe*, 484 U.S. 305, 319-20 (1988) (finding "reasonable expectation" that a policy removing disruptive students from classrooms would be applied to plaintiff in the future based on the nature of plaintiff's disability, *i.e.*, his inability to control his behavior). "Past exposure to illegal conduct" will suffice to demonstrate an injury in fact that warrants declaratory or injunctive relief when this past injury is accompanied by "continuing, present adverse effects." *Sullivan v. Benningfield*, 920 F.3d 401, 407-08 (6th Cir. 2019).

As described by P.M. to her mother, P.M.'s teachers aggressively try to enforce the mandate in that they "do bully me continuously, they are short with my questions and never choose me when I raise my hand, they bush me off consistentl[y]." Maras Decl. ¶ 46, Exh. "B". This is not the school environment required under Defendants' own policies. PAC ¶ 34. When students try and avoid wearing a mask, the teachers do the following to students: "They yell at them, **and take points off of their assignments just like mine,** but usually they write them up,

_____

of a "local rule". *See e.g.*, Ohio Rev. Code § 119.01(C). **Defendants' cutthroat style of legal writing *as against a pro se litigant* speaks for itself and should respectfully not be condoned.**

and bully the students into wearing a mask. They will call them arrogant and ugly minded, and that they "will not go far if they lack common human decency." *Id*. (emphasis added). In other words, Defendants permit ongoing harassment **by teachers** as a means of enforcing their unconstitutional mask mandate.[7]

### 2. Plaintiff properly asserts a 42 U.S.C. § 1983 claim given the facts alleged in the Amended Complaint demonstrate state actors have violated numerous Federal constitutional rights belonging to Plaintiff

Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute. 42 U.S.C. § 1983. *See also Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) ("A plaintiff suing under § 1983 must establish that he was denied a constitutional right, and that the deprivation was caused by a defendant acting under color of state law."). Plaintiff was deprived of four federal constitutional rights.

### a. Plaintiff has a procedural due process right that was violated

---

[7] This teacher bullying is outlined in the Maras Declaration but not in the Amended Complaint. It is respectfully requested that the Court rule on the motion based, in part, on the Declaration of Plaintiff. Otherwise, the Court can allow Plaintiff to amend the Complaint, pursuant to Fed. R. Civ. P. 15(a)(2), to conform to the evidence. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (recognizing that a *"pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers"); *League of United Latin Am. Citizens v. Bredesen*, 500 F. 3d 523, 529 (6th Cir. 2007) ("[I]t would not serve justice to dismiss the appeal at this point because of a technical pleading deficiency, in the face of undisputed record facts confirming that plaintiffs actually do have standing and did have standing to prosecute their claims when the complaint was filed."). *See also Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 291 (6th Cir. 2011) ("In addition to the allegations in the complaint, [the Court] **may also consider other materials that are integral to the complaint**, are public records, or are otherwise appropriate for the taking of judicial notice.") (emphasis added).

"[T]he Due Process Clause [of the Fifth Amendment] provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." *Cahoo v. SAS Analytics Inc.*, 912 F. 3d 887, 889 (6th Cir. 2019). The Fourteenth Amendment takes the Fifth Amendment's Due Process Clause and provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V; U.S. Const. Amend. XIV. Plaintiff has properly alleged that procedures in place were taken away prior to the implementation of the MCSD mask mandate and that it was enacted in contradiction to its stated policies – violating Plaintiff's procedural due process rights. *See* PAC ¶¶ 56 – 60. Defendants do not address this procedural due process claim so no response is needed and this claim should proceed to discovery.

### b. Plaintiff has substantive due process rights that were violated

While the Due Process Clause under the Fourteenth Amendment guarantees fair process, it also "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). More specifically, the Due Process Clause prohibits governmental interference with rights "rooted in the traditions and conscience of our people as to be ranked as fundamental" or "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted). Plaintiff's right to make healthcare and educational upbringing decisions regarding her child – two of the most personal and important of parental decisions, constitute rights so basic and fundamental and so deep-rooted in our society that they stand as substantive constitutional rights. Not surprisingly, the Supreme Court in *Troxel* also recognized that "there is a presumption that fit parents act in the

best interests of their children." *Troxel, supra*, 530 U.S. at 68.

The Supreme Court has for nearly one hundred years jealously guarded a parent's liberty interests in raising their children – affirming a constitutional custodial right protecting the right of parents to decide on the care and upbringing of their children. *See Winkelman v. Parma City School Dist.*, 127 S. Ct. 1994, 1996 (2007) ("It is not a novel proposition to say that **parents have a recognized legal interest in the education and upbringing of their child.**") (emphasis added); *Troxel, supra*, 530 U.S. at 66 ("The liberty interest at issue in this case - **the interest of parents in the care, custody, and control of their children - is perhaps the oldest of the fundamental liberty interests recognized by this Court.**"); *Parham v. J. R.*, 442 U. S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit **with broad parental authority over minor children**. Our cases have consistently followed that course") (emphasis added); *Quilloin v. Walcott*, 434 U. S. 246, 255 (1978) ("We have recognized on numerous occasions that **the relationship between parent and child is constitutionally protected**") (emphasis added); *Moore v. City of E. Cleveland*, 431 U.S. 494, 503-05 (1977) (recognizing that "**[d]ecisions concerning child rearing**, which *Yoder, Meyer, Pierce* and other cases have recognized as entitled to constitutional protection" protect the sanctity of the family "because the institution of the family is deeply rooted in this Nation's history and tradition.") (emphasis added); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974) ("This Court has long recognized that freedom of **personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.**") (emphasis added); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture

and upbringing of their children. **This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition**.") (emphasis added); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (recognizing that "[t]he integrity of the family unit **has found protection in the Due Process Clause of the Fourteenth Amendment**") (emphasis added); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("**It is cardinal with us that the custody, care and nurture of the child reside first in the parents**, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") (emphasis added); *Pierce v. Society of Sisters*, 268 U. S. 510, 535 (1925) ("The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only. **The child is not the mere creature of the State**; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.") (emphasis added); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to . . . . establish a home **and bring up children**.") (emphasis added). *See also Russ v. Watts*, 414 F. 3d 783, 789 (7th Cir. 2005) (recognizing the fundamental constitutional liberty interest in the "care, custody, and control of their children") (citations omitted); *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) ("Parents . . . have a constitutionally protected liberty interest in the care, custody and management of their children.") (citations omitted); *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994) ("[T]he sanctity of the family unit is a

fundamental precept firmly ensconced in the Constitution and shielded by the Due Process

Clause of the Fourteenth Amendment.") (internal citations and quotation marks omitted).

While Defendants ignore one hundred years of applicable law, it is respectfully

requested that the Court reject such an approach and carefully apply this authority to deny

Defendants' motion.

Coupled with Plaintiff's fundamental right to raise her daughter without governmental

intrusion there exists another applicable fundamental right – this one derived from Plaintiff's

daughter and now asserted on her behalf.  Whether couched as an "informed consent" right or

the fundamental right to make healthcare decisions, the fundamental liberty right to choose

one's healthcare has long been recognized by the Supreme Court.  *See Cruzan v. Director, Mo.*

*Dept. of Health*, 497 U.S. 261, 269 – 270 (1990) ("The informed consent doctrine has become

firmly entrenched in American tort law. . . .The logical corollary of the doctrine of informed

consent is that the patient generally possesses the right not to consent, that is, to refuse

treatment.") (citations omitted); *Id.* at 278 ("The Fourteenth Amendment provides that no

State shall 'deprive any person of life, liberty, or property, without due process of law.'  **The**

**principle that a competent person has a constitutionally protected liberty interest in refusing**

**unwanted medical treatment may be inferred from our prior decisions**.") (emphasis added);

*Mills v. Rogers*, 457 U. S. 291, 294, n. 4 (1982) ("[T]he right to refuse any medical treatment

emerged from the doctrines of trespass and battery, which were applied to unauthorized

touchings by a physician"); *Washington*, *supra*, 521 U.S. at 725 ("The right assumed in *Cruzan*,

however, was not simply deduced from abstract concepts of personal autonomy. Given the

common-law rule that forced medication was a battery, and the **long legal tradition protecting**

**the decision to refuse unwanted medical treatment**, our assumption was entirely consistent with this Nation's history and constitutional traditions.") (emphasis added); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 453 (1985) (Stevens, J., concurring) ("The judiciary exists as a check on majoritarian rule. It has a duty to protect the Constitutional rights, including privacy **and bodily autonomy**. . . .") (emphasis added); *Union Pacific R. Co. v. Botsford*, 141 U. S. 250, 251-252 (1891) ("The inviolability of the person" has been held as "sacred" and "carefully guarded" as any common-law right."); *Tune v. Walter Reed Army Medical Hospital*, 602 F. Supp. 1452, 1455 (D.C. 1985) (It is "a well-established rule of general law. . . that it is the patient, not the physician, who ultimately decides if treatment - any treatment - is to be given at all.. . . The rule has never been qualified in its application by either the nature or purpose of the treatment, or the gravity of the consequences of acceding to or foregoing it."). *See also Downer v. Veilleux*, 322 A. 2d 82, 91 (Me. 1974) ("The rationale of this rule lies in the fact that every competent adult has the right to forego treatment, or even cure, if it entails what for him are intolerable consequences or risks, however unwise his sense of values may be to others"); *Canterbury v. Spence*, 464 F. 2d 772, 780 (D.C. Cir.), *cert. denied*, 409 U. S. 1064 (1972) ("The root premise" of informed consent "is the concept, fundamental in American jurisprudence, that '[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body'".) (citation omitted); *Natanson v. Kline*, 186 Kan. 393, 406-407, 350 P. 2d 1093, 1104 (1960) ("Anglo-American law starts with the premise of thorough-going self determination. It follows that each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment.").

While ignoring this applicable authority, Defendants rely on unpublished federal district court cases from other Circuits – none of which address the relevant constitutional authority. Given the importance of the matters set forth in this action, Plaintiff would rather focus on directly applicable Supreme Court authority and the one Sixth Circuit case that provides the best "step-by-step" guidance for this Court, namely the *Kanuszewski* decision.[8]

In *Kanuszewski*, the Sixth Circuit determined what claims parents could bring against state actors who took blood samples of their newborn children without adequate parental consent. *Kanuszewski, supra*, 927 F.3d at 404 ("Plaintiffs allege that Defendants violated their substantive due process rights by not allowing them to decide whether to accept or reject the medical procedure in question prior to the collection of their babies' blood."). The samples were used to test for certain diseases and then later stored at a facility accessible to the Michigan Department of Health and Human Services. The Court concluded that only those claims on behalf of the parents **seeking injunctive relief** barring subsequent retention, transfer, and storage of the samples could be pursued. *Kanuszewski, supra*, 927 F.3d at 419 – 420 ("[I]t is **logically the parents who possess a fundamental right to direct the medical care of their**

---

[8] For example, Defendants cite four Free Exercise mask cases without providing any of the facts of those cases – three of which are unpublished decisions from New York, Connecticut, and Indiana. Defs. Mem. 7 - 8. The fourth case – a Sixth Circuit decision, did not address potential harm or any actual substantive rights argument – it simply relied on a Free Exercise analysis not pertinent here. *See Resurrection School v. Hertel*, No. 20-2256, Slip Op., * at 30 (6th Cir. Aug. 23, 2021) ("Plaintiffs' challenge to the MDHHS Orders lies in the First Amendment's Free Exercise Clause, and thus, their substantive-due-process claim is duplicative. **The district court admittedly did not explicitly address the merits of Plaintiffs substantive-due-process claim.** We nonetheless conclude that Plaintiffs' substantive-due-process claim is without merit.") (emphasis added). Suffice it to say, our facts and arguments are quite different – as is the applicable jurisdiction and law.

**children**. For these reasons, parents' substantive due process right "to make decisions concerning the care, custody, and control" of their children includes the right to direct their children's medical care. . . . . The only remaining question is whether Defendants' subsequent retention, transfer, and storage of the samples violate the parents' fundamental rights. Plaintiffs allege facts sufficient to state plausible claims for relief on this issue, and we therefore reverse the district court's dismissal of these claims. . . . Taking these allegations as true, Defendants' actions constitute a denial of the parents' fundamental right to direct the medical care of their children, and their actions must survive strict scrutiny.") (citations omitted).

Again, it is almost beside the point that the existing and future harm revealed by this matter dwarfs the future risks addressed in the *Kanuszewski* case. Given the potential harm and lack of efficacy outlined in the Amended Complaint, Petty Affidavit and Maras Declaration, the decision whether to use masks – acknowledged medical devices, should be left squarely with Plaintiff. More to the point, the existence of Plaintiff's two fundamental rights allowing her to direct healthcare decisions for her child means that "[g]overnment actions that burden the exercise of [these rights] are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000). *See also Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (Whenever a policy "significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."). The compelling-interest prong can easily be conceded by Plaintiff in this case. Yet, as recognized by the Supreme Court: "Stemming the spread of COVID-19 is unquestionably a compelling interest, but it is hard to see how the challenged

regulations can be regarded as 'narrowly tailored.'" *Roman Catholic Diocese of Brooklyn, supra,* 141 S. Ct. at 67 (citation omitted).

To be narrowly tailored, a law must be the least restrictive means of accomplishing the legislature's compelling interest. *United States v. Playboy Entertainment Group,* 529 U.S. 803, 813 (2000). Respectfully, this fact-sensitive inquiry should not be decided in a motion to dismiss. *See e.g., Kanuszewski, supra,* 927 F.3d at 421 ("On remand, the parties will also be able to produce evidence relating to whether Defendants had a compelling interest in retaining, transferring, and storing the children's blood samples after screening them for diseases, and whether Defendants' means for achieving their interest were narrowly tailored.").

### c. Plaintiff has a Ninth Amendment right that was violated

Under the Ninth Amendment: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. The Ninth Amendment was added to the Bill of Rights to ensure no one could "deny fundamental rights merely because they were not specifically enumerated in the Constitution." *Gibson v. Matthews,* 926 F. 2d 532, 537 (6th Cir. 1991).

Defendants correctly point out that Plaintiff alleges: "Defendants violated her "Ninth Amendment rights by usurping Plaintiff Terpsehore Maras' right to protect the health and safety of her minor child." Defs. Mem. 3, n. 3. Their response is simply that "the Ninth Amendment does not give rise to a substantive claim for relief." *Id.* According to Defendants: "While the Ninth Amendment may recognize unenumerated fundamental rights, Plaintiff must bring those claims under another amendment." Defs. Mem. 13. They are wrong.

Plaintiff does not deny that the Ninth Amendment operates here only as a conduit for asserting her fundamental rights as a parent and the word "parent" is certainly not in the Ninth Amendment or even the entire Federal Constitution for that matter. *See* PAC ¶ 69. Yet, in *Griswold v. Connecticut*, 381 U. S. 479 (1965), the Supreme Court held a Connecticut birth control law unconstitutional while the words "marriage", "right of privacy", "birth control", and "family rights" were nowhere to be found in the Constitution. In recognizing a fundamental constitutional "right of privacy in marriage", Justice Goldberg wrote: "The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments." *Id.* at 488. In other words, "the Framers did not intend that the first eight amendments be construed to exhaust the basic and fundamental rights which the Constitution guaranteed to the people." *Id.* at 490.

Defendants denigrate this key part of the Bill of Rights by suggesting that if offers nothing of real substance and "is merely a rule of construction". Defs. Mem. 12. This position ignores the fact the Ninth Amendment is a vital aspect of the Constitution and can be concretely used by this Court – whether described as a "rule of construction" or otherwise.

The Supreme Court's decision in *Griswold* shatters any pretense Defendants may have regarding how the Ninth Amendment operates:

> **While this Court has had little occasion to interpret the Ninth Amendment, "[i]t cannot be presumed that any clause in the constitution is intended to be without effect."** *Marbury v. Madison*, 1 Cranch 137, 174. In interpreting the Constitution, "real effect should be given to all the words it uses." *Myers v. United States*, 272 U. S. 52, 151. **The Ninth Amendment to the**

> Constitution may be regarded by some as a recent discovery and
> may be forgotten by others, but since 1791 it has been a basic
> part of the Constitution which we are sworn to uphold. *To hold*
> *that a right so basic and fundamental and so deep-rooted in our*
> *society as the right of privacy in marriage may be infringed*
> *because that right is not guaranteed in so many words by the*
> *first eight amendments to the Constitution is to ignore the Ninth*
> *Amendment and to give it no effect whatsoever.* Moreover, a
> judicial construction that this fundamental right is not protected
> by the Constitution because it is not mentioned in explicit terms
> by one of the first eight amendments or elsewhere in the
> Constitution would violate the Ninth Amendment, which
> specifically states that "[t]he enumeration in the Constitution, of
> certain rights, shall not be *construed* to deny or disparage others
> retained by the people.

*Griswold, supra*, 381 U.S. at 490 – 492 (emphasis added). *See also Roe v. Wade*, 410 U.S. 113,

153 (1973) ("This right of privacy, whether it be founded in the Fourteenth Amendment's

concept of personal liberty and restrictions upon state action, as we feel it is, **or, as the District**

**Court determined, in the Ninth Amendment's reservation of rights to the people**, is broad

enough to encompass a woman's decision whether or not to terminate her pregnancy.")

(emphasis added).

Plaintiff's Ninth Amendment liberty right in parenting – a right not found in the Bill of

Rights, should respectfully be recognized, and enforced by this Court.  As set forth above, it is a

basic and fundamental right that is deep-rooted in our society and merits protection from state

interference unless such interference is narrowly tailored to suit a compelling need.  More to

the point, whether such tailoring was properly undertaken by Defendants is not subject to

resolution in a motion to dismiss.

### d.  Plaintiff has a Tenth Amendment right that was violated

Under the Tenth Amendment:  "The powers not delegated to the United States by the

Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. Amend. X. According to Defendants, this claim can only be made directly as against the Federal Government. Defs. Mem. 14 ("Here, Plaintiff has not identified any action by the federal government with respect to Defendants' mask mandate."). There is no authority for such a position – even the cited case from the Western District of New York does not create such a rule. All constitutional prohibitions – including the one found under the Tenth Amendment, stand as prohibitions against all conduct from any quarters. In this case, Defendants are in violation of the Tenth Amendment even though this constitutional prohibition is intended to **protect state actors**.

In this case, the Federal Government has improperly intervened in the most local of matters, namely how local schools should be run. For example, Defendants received significant federal funding directly related to its implementation of COVID-19 mitigation efforts – nearly $4 million in ESSER funding alone. PAC ¶ 50; Maras Decl. ¶¶ 36 – 39. Moreover, Defendants relied on "scientifically unfound and constitutionally repugnant guidance by federal government agencies and enacting an oppressive a dangerous universal mask mandate in misguided reliance on the information provided by the federal government. . . ." PAC ¶ 70. *See also* Defs. Mem. 2 (arguing the mask mandate is "consistent" with CDC "guidance"); PAC, Exh. "P" (describing the use of "funds to enact appropriate measures to help schools to invest in mitigation strategies consistent with the Centers for Disease Control and Prevention's (CDC) Operational Strategy for K-l2 Schools to the greatest extent practicable.").

Such meddling is improper under the Tenth Amendment and any remnants of this interference should be rejected – including Defendants' mask mandate. *See Hybud Equipment*

*Corp. v. City of Akron, Ohio*, 654 F. 2d 1187, 1196 (6th Cir. 1981) ("Since solid waste disposal

including the regulation of garbage collection, incineration and "recycling" **is a customary area**

**of local concern long reserved to state and local governments by practice, tradition and legal**

**precedent**, the Sherman Act should not apply. Tenth and Eleventh Amendment values support

the authority of local governments to act in this field.") (emphasis added). *See also Chiafalo v.*

*Washington*, 140 S. Ct. 2316, 2333 (2020) (Thomas, J., concurring) ("When the Constitution is

silent, authority resides with the States or the people. This allocation of power is both

embodied in the structure of our Constitution and expressly required by the Tenth

Amendment."); *Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1477 (2018) ("[A]

healthy balance of power between the States and the Federal Government [reduces] the risk of

tyranny and abuse from either front.") (citation omitted); *Printz v. United States*, 521 U.S. 898,

935 (1997) ("The Federal Government may neither issue directives requiring the States to

address particular problems, nor command the States' officers, or those of their political

subdivisions, to administer or enforce a federal regulatory program. **It matters not whether**

**policymaking is involved, and no case-by case weighing of the burdens or benefits is**

**necessary**; such commands are fundamentally incompatible with our constitutional system of

dual sovereignty.") (emphasis added)

**POINT II**
**PLAINTIFF'S AMENDED COMPLAINT SETS FORTH**
**PLAUSIBLE STATE CLAIMS BASED ON DEFENDANTS'**
**VIOLATION OF ARTICLE I, SECTIONS 16 AND 21 OF THE**
**OHIO CONSTITUTION**

1. **Defendants are in violation Plaintiff's procedural and**
   **substantive due process rights under the Ohio**
   **Constitution**

In Counts VI and VII, Plaintiff brings forth due process claims under the Ohio

Constitution. See PAC ¶¶ 81, 88. Procedural and substantive due process violations under the

U.S. Constitution constitute equivalent violations under the Ohio Constitution. *See Hartford*

*Fire Ins. v. Lawrence, Dykes, Goodenberger*, 740 F. 2d 1362, 1367 (6th Cir. 1984) ("Section 16 of

the Ohio Constitution has been described as 'equivalent to the due process clause of the

fourteenth amendment.'") (citation omitted). Accordingly, for the reasons set forth above in

Point I(a) and (b), Plaintiff should respectfully be permitted to pursue her claims under Article I,

Section 16 of the Ohio Constitution. Ohio Const. Art. 1, § 16.

### 2. The Ohio Health Care Amendment bars the Wildcat Health Care System

Article I, Section 21 of the Ohio Constitution reads in part:

> **Preservation of the freedom to choose health care** and
> health care coverage
>
> §21 (A) **No federal, state, or local law or rule shall
> compel, directly or indirectly, any person**, employer, or
> health care provider **to participate in a health care
> system**. . . .
> (E) As used in this Section. . . (2) **"Health care system"
> means any public or private entity or program whose
> function or purpose includes the management of,
> processing of, enrollment of individuals for**, or payment
> for, **in full or in part, health care services, health care
> data, or health care information for its participants**.

Ohio Const. Art. I, § 21 (emphasis added). *See also* PAC ¶¶ 76 – 78.

Whether deliberately or inadvertently, Defendants misrepresent the language of this

Amendment. Contrary to what is stated by Defendants, there is no language in this

Amendment requiring "a law" do anything by way of "fines or penalties". *Compare* Defs. Mem.

11 (falsely claiming this Amendment "requires that there be a civil or criminal penalty, fine or

surcharge for failure to comply with the law.") *with* Ohio Const. Art. I, § 21 ("(A) No federal, state, or local law **or rule** shall compel, directly or indirectly, any person, employer, or health care provider to participate in a health care system. . . . (E) As used in this Section, (1) "Compel" **includes** the levying of penalties or fines.") (emphasis added).

By way of background, the Ohio Health Care Amendment was placed on the November 8, 2011 ballot as an initiated constitutional amendment and passed with over 65% of the vote. Maras Decl. ¶ 31. Even though the measure was initially launched in response to the signing of a 2010 national health care mandate law, the amendment's final language comfortably serves today as a constitutional safeguard against the conduct of Defendants. The Official Explanatory Statement for this successful ballot initiative states the Ohio Health Care Amendment was explicitly initiated to "preserve the freedom of Ohioans to choose their health care." Maras Decl. ¶32.

In fact, the Official Explanatory Statement in favor of this successful ballot initiative begins: "Protect your health care freedom, preserve your right to choose your doctor and health insurance, **and keep government out of your personal medical decisions**." *Id.* (emphasis added). *Compare* Defs. Mem. 11 ("The mask mandate is not an insurance program. It simply requires individuals to wear masks."). As set forth above in footnote 6, Defendants compelled by way of a **local rule**. As a result, Plaintiff's daughter now participates a health care system affiliated with the Cleveland Clinic – the Wildcat Health Care System. Maras Decl. ¶¶ 40 - 43. While Defendants is certainly free to provide health care services to its students and employees, it is prohibited from compelling participation in such a health care system if it has as its function or purpose the management of, processing of, enrollment of MCSD students and

employees for, in full or in part, health care services, health care data, or health care information. *See* Ohio Const. Art. I, § 21. This system is **physically headquartered in the High School** and is the nerve center for all of Defendants' data collection activities. *Id.* At no point in time did Plaintiff ever consent to the use of P.M.'s personal health care data for use in the Wildcat Health Care System. Plaintiff can now bring forth this constitutional claim on behalf of her minor daughter. *Kanuszewski*, *supra*, 927 F.3d at 416.

Defendants' mask mandate and its resulting harmful efforts to stop a virus with a paradoxical near zero chance of seriously harming children (Maras Decl. ¶ 44) is furthered by the receipt of personal healthcare data into the Wildcat Health Care System and its distribution of medical advice within the High School. More to the point, it compels the use of unhealthy medical devices without adequate informed consent and collects personal data of students and employees – whether quarantine information, contact tracing data, or any other form of personal information that is managed and processed by Defendants in its Wildcat Health Care System. By promoting a health care system that tracks health data and mandates ineffective and potentially harmful masks within that tracking system, Defendants violate the Ohio Constitution and endanger the health and welfare of Ohioan children. This Court respectfully must follow the law and right our ship before it's too late.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the pending Motion to Dismiss; that the Court allow this matter to proceed to discovery; and that the Court grant what other relief it deems fair and just.

Respectfully submitted,

_____

TERPSEHORE MARAS

Dated:  October 29, 2021

## CERTIFICATE

I hereby certify that on this 29th day of October, 2021, a copy of the foregoing Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint and in Support of Cross Motion to Appoint Counsel was filed with the United States District Court for the Northern District of Ohio. Notice was also sent to Defendants counsel via email to:

Tom.Feher@ThompsonHine.com.

I also certify that pursuant to L. Civ. R. 7.1(f), I have not been informed by the Clerk that this action has been assigned a track. Accordingly, in keeping with L. Civ. R. 7.1(f), Plaintiffs' Memorandum of Law does not exceed the page limitation for dispositive memorandums filed in **complex cases** – which is the anticipated track for constitutional cases of this nature. To the extent this case is eventually assigned to the standard track, it is respectfully requested that the Court permit the within Memorandum of Law to exceed the twenty-page limitation of a standard track case.

_____

TERPSEHORE MARAS