UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

P.M., a minor, by and through
Her parent, Terpsehore Maras,       Case No. 1:21-cv-1711

          Plaintiff,
                                     September 9, 2021
     vs.                             11:16 a.m.


MAYFIELD CITY SCHOOL DISTRICT
BOARD OF EDUCATION, ET AL.,

          Defendants.


     TRANSCRIPT OF TEMPORARY RESTRAINING ORDER PROCEEDINGS
        BEFORE THE HONORABLE SOLOMON OLIVER, JR.
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:        Ms. Terpsehore Maras, Pro Se


For the Defendants:       Thomas Feher, Esq.
                          Stephanie Chmiel, Esq.




Official Court Reporter:  Susan Trischan,RMR,CRR,FCRR,CRC
                          7-189 U.S. Court House
                          801 West Superior Avenue
                          Cleveland, Ohio    44113
                          (216) 357-7087

Proceedings recorded by mechanical stenography.
Transcript produced by computer-aided transcription.

<u>THURSDAY, SEPTEMBER 9, 2021, 11:16 A.M.</u>

1

2          THE COURT:  This is Judge Oliver.

3          How is everybody?

4          MR. FEHER:  Good morning, Your Honor.

5          Tom Feher.

6          Very good, thank you.

7          THE COURT:  Thank you.

8          Just one moment.

9          (Pause).

10          MS. MARAS:  Your Honor, good morning.

11          THE COURT:  Good morning.

12          MS. MARAS:  Good morning, Your Honor.

13          I was just made aware that there was

14   filings, and I don't have access to the electronic filing

15   system because the Court requires me to file for an

16   application.

17          So before we start I just would like to ask

18   for two things.

19          One, if you can speak clearly and pause

20   between talks because I'm using an amplifying device that

21   delays the speech because I'm hard of hearing.  So I

22   don't want to sound rude and come up speaking over

23   someone and, therefore, I apologize in advance if I speak

24   loud.

25          And then the other one is I believe since

1    the Court requires me as a citizen to have access to my

2    Court as a pro se litigant only on paper and I'm unable

3    to use the electronic filing system to access, I would

4    therefore respectfully request, Your Honor, if you could

11:17:40  5    afford me the same rights that defendants' counsel has to

6    file and access documents in this case with the same

7    timely privilege which will aid me in providing the

8    evidence and documents that I will be citing during the

9    hearing because apparently another attorney made their

11:17:54 10    appearance and they filed something, and I have no access

11    to that.

12              And no one e-mailed it to me, and my

13    information is on the documents that I filed.

14              THE COURT:  All right.  I will get back to

11:18:06 15    you, but let me -- let me start first, and I'll address

16    everything that you wish -- you wish me to address.

17              MS. MARAS:  Thank you, Your Honor.

18              THE COURT:  Let me just -- yeah.

19              This is on the record, and this is the case

11:18:22 20    of Terpsehore -- how do you pronounce your first name?

21              MS. MARAS:  Terpsehore.

22              THE COURT:  Terpsehore Maras versus

23    Mayfield City School District Board of Education, and the

24    case number is 1:21-cv-1711.

11:18:49 25              And this case involves all the defendants

1    of -- other defendants other than the Mayfield City

2    School District Board of Education, and there are a

3    number of them so I won't go through all those.

4              This complaint was filed pro se on

5    September 2nd, 2021.

6              At that time Ms. Maras called the office

7    and she wanted to know why the Court wasn't proceeding on

8    that right away.

9              I indicated that there were requirements

10   under the Rule that she indicate what attempts she made

11   to contact the other side, and that I'd prefer to have

12   someone on the other side, if we could get them in a

13   reasonable time frame.  And I indicated that that could

14   be the superintendent or other people in the school

15   system or it could be counsel, but it was my practice to

16   try to get people on the line.

17             And she had not really made any case that I

18   should proceed ex parte as, you know, but there are

19   circumstances where, with TROs, the Court would proceed

20   without hearing from the other side, but I don't think

21   those circumstances existed in this particular case.

22             So that's where we started.  And she

23   assured me that she would work to try to get papers out

24   to the school system, and because I assured her that the

25   fact that she had sat in a meeting before the School

1    Board and she indicated that she was going to sue wasn't

2    sufficient in terms of the notice that would be required

3    here under Rule 65 if -- once she had sued.

4                So once she understood that, she moved

5    ahead to make sure, as I understand it, that those papers

6    were delivered by someone to the superintendent or

7    assistant superintendent or others at the School Board.

8                And thereafter, the counsel for the school

9    district made their -- their appearance, and they -- they

10   have now filed this morning a memorandum in opposition to

11   plaintiff's motion for temporary restraining order and

12   cross-motion to dismiss for lack of standing, and they

13   have also attached to that an Exhibit A which is the

14   affidavit of the superintendent Dr. Michael J. Barnes.

15               So all of that information, including

16   plaintiff's now initial submission to the Court, the

17   complaint and other materials, is before the Court.

18               It is true that with a temporary

19   restraining order, that it's anticipated under the Rules

20   and case law that those cases be given quick attention

21   and turnaround because of the nature of the matters which

22   are asserted or allegedly asserted.

23               And so I'm doing that on the quickest time

24   that I could, assuring that I had the issues properly

25   explained before me.

1          And so that's where we are.

2          So --

3          MS. MARAS:  Your Honor, may I object,

4 please?  May I object, Your Honor?  Because the Court

11:22:38 5 should not consider that document because I haven't even

6 seen it yet, and I didn't even know.

7          THE COURT:  Would you please stop talking

8 and let me finish?  I'm going to give you an opportunity

9 to speak.

11:22:47 10          Now, I've spoken to you on the telephone a

11 number of times and I've tried to be patient and to tell

12 you the procedure.  I'll allow you to do whatever you

13 want, but I'm not done saying how we're going to proceed.

14          You've got to have some patience.  You'll

11:23:02 15 have an opportunity to speak.

16          Those matters are before me.  They are on

17 the docket.  They are there, and that's what I'm saying,

18 factually they are there.

19          Now, we can move from there.

11:23:13 20          Let me have the parties introduce

21 themselves, and then we'll move through the process.

22          So you're representing yourself

23 or -- and/or your minor child, at least that's what you

24 intend to do here.

11:23:25 25          Is that right?

1          MS. MARAS:  Yes, Your Honor.

2          THE COURT:  Okay.  Just state your name for

3     the record.

4          MS. MARAS:  My name is Terpsehore Maras.

11:23:35  5          THE COURT:  All right.  And then let me

6     have counsel for the defendants introduce themselves for

7     the record.

8          MR. FEHER:  Your Honor, this is Tom Feher,

9     and I'm on with my partner Stephanie Chmiel from Thompson

11:23:50 10    Hine on behalf of all the defendants.

11          THE COURT:  All right.  Thank you.

12          You weren't able -- you didn't have time or

13     you weren't able to Xerox a copy -- not Xerox, but fax a

14     copy of your memo to the plaintiffs?

11:24:02 15          MR. FEHER:  Your Honor, we did not have any

16     contact information for the plaintiff.

17          The pleadings that she filed did not

18     include an e-mail, and had a phone number that was

19     stricken out, so we filed it on the system this morning.

11:24:15 20          We are happy to, if we have the e-mail for

21     her, send them over immediately.

22          THE COURT:  Okay.

23          MS. MARAS:  Your Honor, may I?

24          My information and contact information were

11:24:30 25     on the cover sheet that was filed, the civil cover sheet

1   that was filed.  It had my address, my mailing address,

2   my phone number and e-mail.

3            THE COURT:  Okay.  I don't see that on the

4   docket sheet, but why don't you give them -- do you have

5   a fax number or --

6            MS. MARAS:  I do not have a fax number.

7            My e-mail is on the documentation that they

8   were provided.  The school also has all my communication

9   and all my information as provided as well.

10           I don't believe any attempt was made to

11   provide to me those documents, Your Honor.  And I

12   actually penned in my phone number and wrote it in there

13   that the Court had requested me when I filed my

14   documents.

15           THE COURT:  All right.  Well, let's just

16   move from where we are now to see whether we

17   can't -- what is your phone number, first of all?

18           MS. MARAS:  My telephone number is

19   ▇▇▇▇▇▇▇, and I would request the Court not to

20   consider the documents that they filed under Rule 5

21   because it requires the service of all Court filings.

22           THE COURT:  Would you please stop?  Just

23   keep your mouth closed for a minute.  I'm going to allow

24   you to talk and I'm going to allow both sides.

25           I'm going to be fair to you, but you have

           1    to learn that you can't just blurt out.  I'm going to

           2    give you an opportunity to speak.

           3                    What did you say your number is?

           4                    ███, is that what you said, ███?

11:26:02   5                    MS. MARAS:  Yes, Your Honor.

           6                    THE COURT:  ████.

           7                    MS. MARAS:  Yes, Your Honor.

           8                    THE COURT:  Okay.  And put on the record

           9    your e-mail.

11:26:10  10                    I understand you say you gave it or you put

          11    it on another document, but just let's have it now again.

          12                    MS. MARAS:  The e-mail on the docket that I

          13    put is MayfieldParentsUnion@Gmail.Com.

          14                    THE COURT:  That's your e-mail?

11:26:29  15                    MS. MARAS:  Yes.  This is the e-mail that

          16    I'm using for correspondence in respect to this case.

          17                    THE COURT:  Well --

          18                    MS. MARAS:  I'm not comfortable with a

          19    public record.

11:26:42  20                    THE COURT:  That doesn't go to you?

          21                    MS. MARAS:  It goes to me, yes.  That is my

          22    e-mail account.

          23                    THE COURT:  MayfieldParentsUnion, go ahead,

          24    keep going.

11:26:54  25                    MS. MARAS:  @Gmail.com.

1          THE COURT:  MayfieldParentsUnion@Gmail.Com.

2          Is there a Mayfield parents union, or is

3  that yours?

4          MS. MARAS:  It's mine.  It's my personal

11:27:11  5  e-mail account.

6          THE COURT:  But you -- but you've taken

7  liberties there because you're saying it's a parents

8  union.

9          Is there such a thing?

11:27:20 10          MS. MARAS:  Oh, no.  No.  It's just a

11  parody on it because it's for my Court filings.

12          This is the e-mail address that I'm

13  comfortable making public on public records because these

14  are all public records for correspondence regarding this

11:27:36 15  case.

16          THE COURT:  Okay.  I'm not sure whether

17  someone for the next conference joined now.

18          I had one set up and I'd ask my courtroom

19  deputy to try to reach the people who are on the 11:30

11:27:55 20  because I've been running behind this morning.

21          If you're not on this criminal -- not

22  criminal case.

23          If you're not on this case I have in front

24  of me, Maras versus Mayfield City School District, I'd

11:28:10 25  ask that you leave right now and we'll work it out and

1    have my courtroom deputy give you a call.

2                    Somebody joined the conference just now.

3    Who joined?  Someone just joined the conference.  Who

4    joined?

11:28:32  5                    (Pause).

6                    THE COURT:  All right.  So that's -- that's

7    your e-mail, you say, MayfieldParentsUnion@Gmail.Com.

8                    MS. MARAS:  Yes, Your Honor.

9                    THE COURT:  And if counsel were to e-mail

11:28:50  10   you right now with a copy of the document, you could

11   receive it.

12                    MS. MARAS:  Your Honor, I will be able to

13   receive it in a timely fashion -- I'll have to log in --

14   but I won't be able to have the time to review it while

11:29:04  15   we're on the call.

16                    THE COURT:  I didn't ask you that.

17                    If you would answer the question I --

18                    MS. MARAS:  Yes, I can access the e-mail,

19   yes, Your Honor.

11:29:12  20                    THE COURT:  That if they, if they put

21   together a PDF or whatever that contains the documents,

22   you can receive those right now, right where you are.

23                    MS. MARAS:  I believe so, if it's sent to

24   the correct address, yes.

11:29:30  25                    MR. FEHER:  Your Honor, I've just e-mailed

1    the documents to the address we were given.

2              THE COURT:  Okay.  I'm not saying you have

3    to read those documents now, but I want you to verify

4    that you received those right now.

11:29:47  5              MS. MARAS:  One moment.

6              Your Honor, one moment while I log in.

7              THE COURT:  Okay.

8              (Pause).

9              MS. MARAS:  Your Honor, this is Ms. Maras.

11:31:03 10              I've received an e-mail and there are two

11   documents that are downloading, but I demand to have time

12   to review them.

13              THE COURT:  How much do you want?  Middle

14   of next week?

11:31:27 15              MS. MARAS:  Yes.

16              THE COURT:  Now, you filed a motion for

17   temporary restraining order.

18              Do you understand that?

19              MS. MARAS:  I do understand that, sir, but

11:31:36 20   I feel like I'm being ambushed, Your Honor, because I

21   didn't have access to these documents.  They're claiming

22   my information wasn't on there, and they have my

23   communications.

24              I feel like this is done purposely because

11:31:46 25   they know that as a pro se litigant I don't have access

1   to the electronic filing system.

2               The Court that is supposed to be for the

3   people don't allow access to it, to have access to these

4   things.  It's really not just.

11:31:59  5             THE COURT:  Well, I'm giving you access

6   now.

7               Let me say this.  When we do a TRO, we can

8   use informal means to get information out.  That's what I

9   was asking you to --

11:32:12  10            MS. MARAS:  Okay.

11              THE COURT:  That's what I was asking you to

12  do when I told you to get some information to the school

13  district.

14              Because everything is done on an expedited

11:32:21  15  basis, it means that I can hear from the parties even if

16  I don't have any submissions from them at all, and I can

17  hear from them even if they have not been formally served

18  as long as they have notice and I can get them on the

19  phone, because we're trying to make sure that people's

11:32:38  20  interests are represented.

21              So this, this stage here, the motion for

22  temporary restraining order, is one where information can

23  be formal, informal, it can be by paper, it can be

24  through speaking, it can be whatever because the process

11:32:57  25  is geared toward moving fast.

1          It's not unusual for a party, if they have

2     a chance, to file something in response.  It is true that

3     you are not a lawyer and you're not on the ECF and there

4     are certain problems -- Electronic Filing System -- that

11:33:17  5     there are certain problems that are encountered, that we

6     encounter when that's the case.

7          You didn't get counsel, you weren't

8     apparently able to get counsel, and so I respect the fact

9     that you're attempting to proceed on your own.

11:33:33 10          They have raised some very serious issues

11    here regarding your motion -- you didn't call it a

12    motion -- but your motion for temporary restraining

13    order.

14          And so you probably do want to look at that

11:33:49 15    and decide if you can respond or how you can respond

16    because they have put -- their main argument is that you

17    can't even bring this case and that you don't have

18    standing to do it; that you have no -- then they go on to

19    put on the record things that counter all the arguments

11:34:13 20    you've made.

21          So you probably do want -- you do probably

22    want to read this and then go from there.

23          MS. MARAS:  Your Honor.

24          THE COURT:  Oh, and I -- don't, don't

11:34:26 25    interrupt me.

1      MS. MARAS:  I was just going to say if you

2   can speak a little bit louder because I can't hear you.

3   I'm sorry.

4      THE COURT:  Okay.  I'm all right with that

11:34:33 5   request then.  I apologize.  I didn't mean to be so

6   sharp, but I just didn't want you continuing to interrupt

7   me.

8      Are you prepared, will you be prepared at

9   3:00 o'clock today to -- or 3:30 today to, after you've

11:35:00 10   read the matter, to go forward?

11      MS. MARAS:  Yes, Your Honor.

12      I feel confident that any argument that

13   they may have brought forward is -- I do feel confident

14   in not only the factual evidence but the violations of

11:35:16 15   the Constitution because the bottom line, there's

16   irreparable harm when we have our civil liberties

17   violated.

18      And our Ohio State Constitution, there are

19   two Articles in it I will be citing that will, in

11:35:30 20   essence, render moot any argument that they have

21   presented.

22      THE COURT:  Well, why don't you wait for

23   that?

24      Okay.  So read the papers.

11:35:41 25      Mr. Feher.

1          MR. FEHER:  Yes, sir.

2          THE COURT:  Ms. Chmiel, can you be

3  available at 3:30?

4          MR. FEHER:  Yes, Your Honor.

5          THE COURT:  I think it's better we go ahead

6  and hear the matter today, if we can, and so we'll give

7  her an opportunity, which I think is fair, to read your

8  papers.

9          I'm not going -- I don't anticipate it will

10  take us really very long to hear the parties out since

11  Ms. Maras has filed her papers and you filed your papers.

12  I have really a lot of information in front of me.

13          And so it's just an opportunity this

14  afternoon maybe taking up to one-half hour together for

15  the parties to highlight their positions and so forth so

16  that I can be in position to make a ruling.

17          Ms. Maras, does that sound right to you?

18          MS. MARAS:  Yes, Your Honor.

19          Is it possible that I will be able to file

20  a response?

21          It may be not posed in a manner because I

22  don't have a massive law firm to put it together, but I

23  would like to file a response and a motion to strike and

24  dismiss anything that they have.  If I can have that

25  Court access to the Pacer account that I just set up, I

1    would be able to file that, too.

2              I'm more than happy, so that way I can

3    submit the evidence that I wanted to cite today.

4              THE COURT:  Well, why don't you just be

11:37:04  5    prepared to make your arguments and tell us about

6    whatever it is that you want to say?

7              MS. MARAS:  The evidence I have?

8              THE COURT:  No, I -- you know, I don't know

9    how you -- I don't know how you're going to -- we keep

11:37:20 10    going back and forth.

11              You've got your material on the record.

12              MS. MARAS:  I have more material.

13              THE COURT:  You want me to put this off and

14    not make this a temporary restraining order?  That's what

11:37:29 15    you're asking.

16              MS. MARAS:  Well, Your Honor, Your Honor,

17    I'd like the temporary restraining order, but I'd like to

18    file a motion to dismiss their motion to dismiss.

19              I want the TRO.  That's what we need to

11:37:38 20    decide.

21              But I do have further evidence that I

22    wanted to introduce during this call, and if you'd like

23    me to I can send that electronically, too.  That way we

24    can be referencing the CDC documentation, the OSHA

11:37:54 25    documentation and other organizations' documentation that

1    will render their statements made -- which I can only

2    assume because I haven't read it yet -- render them moot

3    under Ohio State laws and Constitution.

4                    THE COURT:  Okay.  Now, you're using some

11:38:09  5    language that's not appropriate legal language, but I

6    think I know what you mean, that you want to file a

7    motion to dismiss their motion to dismiss.

8                    There's no such thing in the law.

9                    MS. MARAS:  Yes.  Sorry.

11:38:22 10                    THE COURT:  What did you say?

11                    MS. MARAS:  I'm so sorry.  I'm just trying

12    to be proper.

13                    THE COURT:  Yeah, I understand.

14                    But we're not going to take a very long

11:38:29 15    time this afternoon because I've got the papers.

16                    If you want this to be a temporary

17    restraining order, we have to keep it that way.  We can't

18    just keep going back and forth, back and forth, back and

19    forth.

11:38:41 20                    Do you think you can -- how quickly can you

21    file whatever you want to file and get a copy over to --

22                    MS. MARAS:  Well, if I have access to be

23    able to communicate to yourself, Your Honor, and the

24    parties, I would be able to send that out from -- by 3:00

11:38:55 25    o'clock.

1          It won't take -- it won't take very long

2     for me to respond to, I guess.

3          It depends -- I mean, they have a whole law

4     firm and I'm one mere citizen -- so that I can respond to

11:39:07  5     each and every claim that they are making.

6          THE COURT:  Okay.  Well, you can do that

7     verbally.

8          MS. MARAS:  Okay.

9          THE COURT:  Because I'm not going to take a

11:39:16 10    long time this afternoon, I'm just going to tell you,

11    because you both filed papers.

12         You want a temporary restraining order.

13    That means that we move quickly.  It means that we're not

14    going to go through it like it's a full case.

11:39:28 15    MS. MARAS:  Yes, sir.

16         THE COURT:  You either want that or you

17    don't.

18         And so -- and you're going to have to calm

19    down.  And if you can get -- if you can -- I'm not giving

11:39:42 20    you -- I'm not getting involved in Pacer.

21         MS. MARAS:  Your Honor, I actually

22    feel -- I feel confident that we can go forward right now

23    without even looking at it, and they can feel free to go

24    ahead because, if it's okay with the Court, I can submit

11:39:56 25    the evidence to, you know, counsel, whatever arguments

1    they have put forward to dismiss my motion for TRO, I

2    feel confident in that because that will not change.

3                    THE COURT:  Well, we're going forward at

4    3:30.

5                    MS. MARAS:  Thank you.  Thank you.

6                    THE COURT:  And if you want to file

7    something, you file whatever you want.

8                    Make sure the other side gets it.

9                    MS. MARAS:  Through their e-mail, I'm

10   assuming, Your Honor?  Through their e-mail that I will

11   send it to them.

12                   And will I send it to yourself as well so

13   that you can be able to view it?

14                   THE COURT:  You can send it, you can send

15   it to my courtroom deputy.

16                   MS. MARAS:  Is that the e-mail that sent me

17   the phone log-in details, Your Honor?

18                   THE COURT:  Yes.

19                   MR. FEHER:  I believe that's correct.

20                   THE COURT:  All right.  Then do that.

21                   MS. MARAS:  Okay.  Sharon Romito, correct,

22   Your Honor?

23                   THE COURT:  Right.  Right.

24                   MS. MARAS:  All right.

25                   THE COURT:  You don't have to get it on the

docket, but just send her a copy, send a copy to them.

We're going forward at 3:30.

MR. FEHER:  Thank you, Your Honor.

MS. MARAS:  Yes, Your Honor.

THE COURT:  All right.  I'll hear from you

all.

(Proceedings recessed at 11:41 a.m.)

- - - -

1           THURSDAY, SEPTEMBER 9, 2021, 3:37 P.M.

2                THE COURT:  There was one person that

3      joined the conference that didn't identify herself.

4                Who is that?

15:37:44  5                Someone joined the conference that didn't

6      identify themselves, they are a person that joined the

7      conference.  All the other persons had names.

8                MR. FEHER:  Your Honor, I -- this is Tom

9      Feher.  I don't know if you heard my name, but I did say

15:37:58 10      it.

11                THE COURT:  I did.

12                MR. FEHER:  Okay.

13                MS. MARAS:  I didn't.  I didn't hear your

14      name, Tom.

15:38:04 15                That's what I thought he was referring to,

16      Tom.  I heard Stephanie and my child's name and the court

17      reporter.  I didn't hear Tom either.

18                THE COURT:  Yeah, I heard -- I heard him.

19                It's okay.  But this is not, you know,

15:38:24 20      there's nothing secret about this, but this is a

21      conference that was between the lawyers and the parties

22      in the case.

23                There was not anybody else that was

24      authorized to be on the line, so I want you to bear -- I

15:38:38 25      want anybody who is on the line to bear that in mind

1    because if you're on the call and you're not invited,

2    I'll have to consider that.

3              So in any event, let's proceed.

4              THE OPERATOR:  A participant has left the

15:39:02  5   conference.

6              MS. MARAS:  I'm sorry.  Who left?  I'm

7    still here.

8              MR. FEHER:  Tom is still here.

9              THE COURT:  Okay.

15:39:08 10            MS. CHMIEL:  Stephanie is still here.

11             THE COURT:  Okay.  So somebody left, right?

12   I thought somebody was here and didn't respond, so I just

13   wanted to make sure.

14             We don't have anything to hide here.  This

15:39:27 15   case is a matter of public record.  Whatever I decide

16   will be a matter of public record.

17             This is being taken down by the court

18   reporter and so forth, and if someone wanted to buy the

19   transcript, they can buy that.  So that's not the issue.

15:39:47 20            But we don't need secret people lurking on

21   the telephone when we're trying to have a conversation.

22   That's the only reason I asked the question.

23             All right.  Again we're back to the case of

24   P.M., plaintiff, and plaintiff Ms. Terpsehore Maras.  I

15:40:14 25   may mispronounce that, but it's T-E-R-P-S-E-H-O-R-E, and

1  last name Maras, M-A-R-A-S, versus the Mayfield City

2  School District Board of Education.

3  We had started this conference on the

4  motion for TRO this morning.

15:40:34  5  I adjourned the conference so that

6  Ms. Maras would have the opportunity to read the

7  memorandum in opposition filed by the defendant, also

8  which included a cross-motion to dismiss for lack of

9  standing. And I indicated to her that they have attached

15:40:56  10  an affidavit to that.

11  It seemed only fair that she should have an

12  opportunity to review what the lawyers had filed on

13  behalf of the defendant before we proceeded, and so I

14  agreed to her request that I not consider that material

15:41:17  15  until she had a chance to respond -- not respond, but to

16  view it.

17  Ms. Maras also indicated the fact that she

18  might desire to file something further in the case.

19  I authorized her to do so if she wanted,

15:41:38  20  and that she could direct it by e-mail to counsel for

21  defendants because she was not able to file

22  electronically, and that she could also, for any

23  additional things she would want to file, by sending an

24  e-mail copy to my courtroom deputy.

15:41:59  25  I inquired of my courtroom deputy before we

1  came back out this afternoon as to whether she had

2  received anything further from Ms. Maras, and she

3  indicated that she had not.

4  So I would assume that there are no

15:42:15  5  additional documents before the Court to consider along

6  with the arguments of counsel and the parties this

7  afternoon.

8  Is that correct, Ms. Maras?

9  MS. MARAS:  Your Honor, that's incorrect.

15:42:28  10  Actually I sent off -- I'm one person and

11  not a lawyer.  I don't have the money to hire a lawyer.

12  And I sent it off trying to make it easily readable, so

13  you can read it as easily as possible.

14  It's in your inbox.  I've already received

15:42:45  15  a reader receipt that it was delivered, because I also

16  sent it to myself in my other e-mail, and that was

17  received as well.

18  THE COURT:  Okay.  What time did you send

19  that?

15:42:55  20  MS. MARAS:  I will tell you.  I think it

21  was at 3:28.

22  THE COURT:  Okay.

23  MS. MARAS:  It was before you joined the

24  call.

15:43:02  25  THE COURT:  Yeah, well, perhaps that was

1  incorrect.

2              MS. MARAS:  Okay.

3              THE COURT:  That was this very moment, you

4  know.

5              So you sent a copy of that to opposing

6  counsel?

7              MS. MARAS:  Yes, Your Honor.

8              MR. FEHER:  Your Honor, we have -- I have

9  on my screen two e-mails from MayfieldParentsUnion, one

10 at 3:34 and one at 3:41.

11             THE COURT:  Okay.  Let me ask my law clerk

12 to see if the courtroom deputy has whatever she has

13 filed.

14             We can proceed though.  Let me just see if

15 she has that.

16                   (Pause).

17             THE COURT:  Okay.  I just inquired of my

18 courtroom deputy who indicates that she did receive an

19 e-mail just now, and what she received was something

20 entitled, "Mercola, M-E-R-C-O-L-A, Take Control of Your

21 Health," and then it was an article, I guess, entitled,

22 "Masks Are a Ticking Time Bomb."

23                   Is that what you sent?

24             MS. MARAS:  Your Honor, there's two

25 e-mails.

1          That was an attachment that didn't attach

2     to the original e-mail, and it was sent subsequently.

3          There was another e-mail that was sent, and

4     I believe the title was "Maras versus MCSD, Case Number

15:46:05   5     1:21-1711," where there's two attachments, the reply

6     brief and Exhibit 2.

7          THE COURT:  Okay.  You said you sent

8     something to me at 3:28.

9          Opposing counsel said what they received

15:46:19  10     was a bit later than that, and they have two things they

11     received.

12          Would that be correct, Ms. Maras?

13          MS. MARAS:  Yes, Your Honor.  Correct.

14          They go through different servers, so I can

15:46:33  15     send it now and your server might get it a minute or two

16     later.

17          So your court reporter -- your Court should

18     have two e-mails.  There's an e-mail that was sent right

19     before the Mercola.  The Mercola was sent after the

15:46:47  20     original e-mail.

21          THE COURT:  Okay.  I'll just --

22          MS. MARAS:  Yes.

23          THE COURT:  I'll just look to get that.

24          We can go ahead and proceed.

15:46:53  25          MS. MARAS:  You're not going to see it?

1   Okay.

2              THE COURT:  Okay.  So you -- I'll -- okay.

3   So you filed a motion -- I don't know if you would title

4   it a motion -- but in essence a motion for temporary

15:47:07 5   restraining order, and it has to do with a requirement

6   that students wear masks in the Mayfield City School

7   District.

8              And you listed your child as the plaintiff

9   and you also listed yourself.  And you purported to sue

15:47:32 10   on behalf of your child because your child's a minor.  So

11   that's -- that's the background of it.

12             And so I've reviewed your papers, I've

13   reviewed those of the defendant.

14             What I thought I would do is give each side

15:47:48 15   about five minutes or so to highlight the most important

16   points of your argument.

17             MS. MARAS:  I --

18             THE COURT:  And -- let me finish.

19             You're going first.

15:48:07 20             MS. MARAS:  Sorry, there was a delay, I

21   apologize.

22             It's my device.  Sorry.

23             THE COURT:  Okay.  You're going to go first

24   because it's your motion, and I'm going to be asking some

15:48:17 25   questions, too.

1    So but you sued for a temporary restraining

2    order, and, as you know, there are certain requirements

3    you have to meet to get that relief because it's only

4    temporary.  And it's because -- and the reason why we

15:48:34  5    grant temporary relief is because if one were to wait

6    until the overall lawsuit to be final, then the person

7    who is denied the relief, if they had irreparable harm,

8    that would be a tough circumstance.

9    And so the idea is to give people a chance

15:48:56  10    to come forward, not on a full record, but on less than a

11    full record to convince the Court that the Court should

12    step in early, even before deciding the case on the

13    merits, and to rule in their favor and to hold that

14    ruling and let them hold that -- let that ruling apply

15:49:20  15    until the Court can decide the whole case.

16    And clearly we're not prepared to decide

17    the whole case because there's nothing -- the pleadings

18    are not complete.  No discovery has been done, and no

19    motions have been filed other than regarding at this

15:49:36  20    preliminary stage.

21    So we've got to meet that high burden,

22    plaintiff has to meet a very high burden in order to get

23    me to rule right now on this record.

24    With that in mind, Ms. Maras, can you just

15:49:52  25    highlight -- I now have got your papers -- the

1    constitutional provisions or theories that you're relying

2    upon?  And then we'll get to facts.

3                Which claims are you bringing?  On

4    what -- what aspect of the Constitution?

15:50:10  5                MS. MARAS:  Your Honor, I just wanted to

6    say the document that I sent you has a few motions in

7    there as my reply brief.

8                The first motion is to request for the

9    temporary restraining order and the motion to dismiss,

15:50:23 10   that there's two separate motions that the Court should

11   bifurcate because the pending motion for the temporary is

12   the only motion properly before the Court.

13                I'm entitled to have time under Rule 7.1 to

14   actually respond to the motion to dismiss.  Usually the

15:50:41 15   opposing party has 30 days, right?  But obviously the

16   local rule, if the Court was to find that it was not

17   dispositive, then I should still have 14 days to --

18                THE COURT REPORTER:  I'm sorry, could you

19   repeat that?

15:51:03 20                MR. FEHER:  Dispositive.

21                MS. MARAS:  I'm sorry, I'm hard of hearing

22   so sometimes I articulate things not to the standard, so

23   I apologize for that.

24                So normally I would be allowed by law at

15:51:14 25   least 14 days to respond, so that was my first motion in

 1   the document that I sent that you don't have in front of

 2   you, Your Honor.

 3                   And then the second motion is that I

 4   requested a ruling on the oral motion for permission to

15:51:27  5   access the Court's electronic filing system, Pacer, so

 6   that I could be -- I could have the same, you know,

 7   access and privileges that the attorneys have, which I

 8   haven't been afforded.

 9                   So I wanted to address those two before I

15:51:43 10   get into the TRO status of the case, of course.

11                   THE COURT:  All right.  I want you to

12   address what I want you to address, and that's what you

13   have to understand.

14                   I'm not going to be sitting here all

15:51:55 15   afternoon going off on side tangents.

16                   You filed a motion for a temporary

17   restraining order.  Therefore, you've asked me to put

18   down all the work that I have in other cases and give

19   attention to yours.

15:52:10 20                   MS. MARAS:  Thank you.

21                   THE COURT:  I'm willing to give the case

22   the attention it deserves, but I can't keep having you

23   putting off what I'm trying to resolve.

24                   I want to talk about the temporary

15:52:22 25   restraining order.

1      I understand, I don't have any problem with

2 you're saying that you'd like time to respond to the

3 motion to dismiss or any of those other kinds of things

4 because you don't want your case dismissed right now.

15:52:35  5      I'll address those before I conclude, and I

6 don't have a problem with you raising those issues.  I

7 just wish you would address things, though, in the order

8 which I'm trying to proceed.

9      And then if there are additional things you

15:52:51 10 want to raise, you may do that.

11      That's all I'm trying to do.

12      So if you would just stick to the motion

13 for temporary restraining order and assume that, you

14 know, if you're concerned about me dismissing your case

15:53:09 15 today without your having a chance to respond, which I

16 thought you were doing, that's -- that's fine.  And I

17 understand that concern.

18      Right now put that aside.  Just for the

19 sake of argument, assume I'm not going to dismiss your

15:53:23 20 case today on the merits, but that I'm going to rule on

21 your motion for temporary restraining order.

22      So just limit yourself to that.

23      MS. MARAS:  Yes.  Thank you, Your Honor.

24      And I apologize.  I don't do this for a

15:53:39 25 living so I don't know the rules, so I really apologize

1   for that, and thank you for that clarification.

2           So your question to me is why should I have

3   a TRO? Well, it's that I have established that it's

4   likely to succeed which I'm pretty positive on because I

15:53:57  5   have attached evidence for that, and that I would suffer

6   irreparable harm.

7           Now, irreparable harm --

8           THE COURT: Just stop for a moment.

9           You're going to get to those, but you're

15:54:07  10   going to answer the question that I --

11           MS. MARAS: The constitutional, that's what

12   I'm getting at. The irreparable harm is the

13   constitutional rights right here --

14           THE COURT: Okay.

15:54:17  15           MS. MARAS: -- because I believe the TRO is

16   justified under the U.S. and Ohio Constitution.

17           All laws which are repugnant to the

18   Constitution are null and void, and that's established in

19   the case *Marbury*. All laws which are repugnant to the

15:54:44  20   Constitution are null and void.

21           So on that basis, on that basis, the Ohio

22   Constitution, Article I, Section 21, is where the

23   Mayfield City School District has compelled both

24   plaintiffs to participate in a health care system

15:55:04  25   involuntarily.

1          Article 1, Section 21, Section -- Part A

2    says, "No federal, state or local law or rule shall

3    compel, directly or indirectly, any person, employer or

4    health care provider to participate in a health care

15:55:22  5  system."

6          Under that same Article I, Section 21, it

7    defines "Health care system" in very precise manner.  And

8    specifically here, we're focusing on the fact that a

9    health care system means that they are providing -- that

15:55:39 10  they are obtaining health care data or health care

11   information from the participant.

12          The defendants, in essence, are collecting

13   and sharing health care data of the plaintiffs in respect

14   to mask wearing, contact tracing, and vaccination status

15:55:55 15  without permission, and compelling all students to

16   participate by compulsion, which is a direct violation of

17   the State of Ohio Constitution.

18          And that is something --

19          THE COURT:  Let me ask -- wait.

15:56:09 20          Let me ask you a question, because unless

21   you have a federal constitutional violation, as I

22   understand it, you can't even raise an Ohio one.

23          MS. MARAS:  Correct.  Correct.

24          THE COURT:  So tell me your federal --

15:56:21 25          MS. MARAS:  My federal one.  The

1  harm -- yes.

2           The harm to the plaintiff is irreparable

3  because the actual or threatened violation is that of a

4  core constitutional right, and it's presumed irreparable.

5           And that's seen by the Federal Courts from

6  *Siegel versus LePore*, and *Deerfield Beach*; it was

7  *Deerfield Medical Center versus City of Deerfield Beach*.

8           The purpose of the whole temporary

9  restraining order is to, indeed, safeguard that, and

10  that's where we are going to, where they are violating

11  her civil liberty to just have a healthy and safe

12  environment, which she's entitled to.

13           We also --

14           THE COURT:  Let me --

15           MS. MARAS:  Go ahead.  Sorry.

16           THE COURT:  Let me stop you again.

17           So you claim that there's a violation of

18  both the Federal Constitution and the State Constitution,

19  and you might, you know, you might have a supplemental

20  claim under Ohio law if you had a federal claim.  But if

21  you had no federal claim, because Mayfield, which is

22  Ohio, and you are from Ohio, I don't think you'd have a

23  state claim.

24           So let's go -- and I guess the other

25  counsel can say whether they agree with me or not later

1      on, but what -- you know, the Constitution has, as you

2      know, several provisions and they're very scurried under

3      those provisions in the Constitution and the case law

4      relative to those provisions.

5               What -- what is your federal -- what are

6      your federal constitutional claims?  What portions of the

7      Constitution or what federal statutes are you relying

8      upon to make your argument?

9               I know you say it's irreparable and it's

10     harmful, but I need to know that first.

11              What constitutional provisions are you

12     relying upon?

13              Ms. Maras?

14              MS. MARAS:  Oh, I'm so sorry.  That was my

15     device.  Your Honor, I apologize.  As I said, I'm hard of

16     hearing and my device is echoing.

17              So deprivation of liberty without due

18     process, the Fourteenth Amendment.

19              THE COURT:  Okay.  What process do you

20     think she was due?

21              MS. MARAS:  That they actually rely on the

22     actual science of this, because I have -- they are

23     forcing my child, first of all, they're compelling her to

24     participate in decreasing and causing her physical and

25     psychological harm on merits that have not been

1    discussed.

2                    There have been no discussions with me as

3    the parent or the child, and that is a problem, because I

4    feel that it's almost involuntary services, in essence,

15:59:23  5    where you're supposed to just do as they say and do not

6    question it, when we all know that science is in flux.

7                    They used to give heroin to babies until

8    science searched and said, "Oh, that's not good."

9                    They had an investment.  And until they

15:59:41 10    could prove that there was irreparable harm people were

11    still using --

12                    (Court Reporter interrupts)

13                    MS. MARAS:  Could you clarify your

14    question?

15:59:55 15                    I'm not understanding.

16                    THE COURT:  The court reporter, she's

17    trying to take down what you're saying, and she's having

18    some difficulty getting it.

19                    MS. MARAS:  Oh, I'm sorry.  Is my

16:00:07 20    articulation bad?  I really apologize.

21                    Until it was realized that there was

22    irreparable harm to health, physical or mental, many

23    procedures have been in place.

24                    And they see now in 2021 that there are

16:00:23 25    studies that are indicating severe negative effects from

1  mask wearing.  Breathing resistance, there are studies

2  coming out every day showing these things.

3            Some of them are causing cardiopulmonary

4  dysfunction, causing asthma.  You know, without a mask

16:00:43  5  how much breathing is there, with the mask how much.

6            They're doing all these studies now because

7  there is an issue.

8            And we see that there are other safer

9  methods that can be implemented.  And there was no

16:00:55 10  discussion with any of the parents.  It was just simply

11  arbitrary power and directive that was provided as a

12  blanket -- as just a blanket statement.

13            And even in my filing that I sent, I

14  pointed out to one portion where there was an affidavit

16:01:11 15  by Dr. Barnes claiming the pediatrics are saying, well,

16  it is not.  Well, in that language, he's wrong there,

17  too, because this is the problem, none of these masks are

18  considered an N95 mask.

19            And my son himself, who has actually

16:01:29 20  completed a degree in molecular and cellular biology and

21  has been fitted for an N95, you have to go through a

22  pulmonary function test in order to be fitted and wear

23  that.

24            And right now we have children with cloth

16:01:42 25  masks which have no efficacy.  OSHA has stated it.  The

1    CDC has stated it.  And what I see is that there's

2    narrative from the Board that are citing people that

3    aren't even subject matter experts.

4                  And I understand that industrial hygienists

16:01:55  5    are a link because the IAHA, which is where industrial

6    hygienists are certified, there's only about 10,000 of

7    them in the whole United States, and if they actually

8    read all the CDC things that they are referring to, they

9    will note down in the page in a footnote it makes

16:02:14 10    reference to surgical masks and N95 and respirators; not

11    cloth masks.

12                  And that is the problem, that we are

13    putting children in harm's way because there are actual

14    physical effects, and let's not even get into the fact of

16:02:28 15    the psychological effects.

16                  And I know that during the complaint where

17    I will be able to bring experts, there are child

18    psychiatrists that will tell you that this is causing

19    irreparable harm to their development and how they fail

16:02:43 20    because children, in many studies for years now, would

21    have to look at the face to learn and to associate.

22                  So this is completely unprecedented, and it

23    feels as if they don't care.  But I can say that I've

24    noticed that there's a financial incentive to implement

16:02:59 25    these, so they have a financial incentive.

1           And just yesterday a watchdog group had

2     received e-mails through a FOIA request indicating that

3     the American Federation of Teachers Union had a clearly

4     workable policy because they were demanding that the CDC

16:03:20  5     do something else because people were not getting

6     vaccinated.

7           So the policies are written by people that

8     are not subject matter experts.

9           THE COURT:  Let me ask you, let me stop you

16:03:27 10    now.

11          So the Fourteenth Amendment due process

12    clause, that's one of your arguments.

13          MS. MARAS:  Yes.  Yes.

14          THE COURT:  Do you have any other

16:03:36 15    constitutional -- what are they?

16          MS. MARAS:  The deprivation of life,

17    liberty and property that I must have is important.  It

18    requires notice and a hearing and discussion.

19          And I'm not suing the school district for

16:03:51 20    money.  What I need is the best thing that I would like

21    is the temporary restraining order and that then to sit

22    down and have an evidentiary hearing where we can

23    actually have a discussion because I'm not allowed to

24    have a discussion.

16:04:04 25          THE COURT:  Now, answer my question.

1        You went back over the due process clause,

2   the liberty without due process.

3        I asked you did you have any other

4   constitutional arguments?  Those are -- that's the same

16:04:21 5   one.

6            MS. MARAS:  Yes.

7        In *Mitchell versus Cuomo*, 1984, there was

8   an alleged deprivation of a constitutional right.  Most

9   Courts hold that no further showing of irreparable injury

16:04:33 10   is necessary.

11            THE COURT:  What is the constitutional

12   right you're talking about?

13        That's what I'm asking.

14            MS. MARAS:  The Fourteenth Amendment which

16:04:41 15   is the deprivation of liberty.

16            THE COURT:  And due process, right?

17            MS. MARAS:  Yes.

18            THE COURT:  Without --

19            MS. MARAS:  Yes.  Yes.  Yes.

16:04:47 20        And I meet the requirement based on

21   *Mitchell versus Cuomo* because I only have to show that,

22   one, it violated and, therefore, most Courts hold that no

23   further showing of irreparable harm is necessary, in

24   *Mitchell versus Cuomo*, 1984.

16:05:02 25            THE COURT:  Your due process is the only

1    constitutional violation you're alleging, is that right?

2                    MS. MARAS:  Well, yes, for now.  For now.

3    Life, liberty, due process, yes.

4                    I mean *Robinson versus Attorney General*

16:05:18  5    also said denying a motion for stay of preliminary

6    injunction enjoining public health orders issued --

7                    (Court Reporter interrupts).

8                    THE COURT:  The court reporter is having a

9    hard time.

16:05:51 10                    MS. MARAS:  Yes, I'm sorry, there's an

11    echo.  I really apologize.

12                    So *Robinson versus Attorney General*, 2020,

13    there was denying a motion for stay of preliminary

14    injunction enjoining public health order issued in

16:06:05 15    response to COVID-19 pandemic because it invaded

16    constitutionally protected Fourteenth Amendment rights.

17                    THE COURT:  Okay.  What case is that?

18                    MS. MARAS:  *Robinson versus Attorney*

19    *General*, 957 F. 3d 1171, and 1177, Eleventh Circuit.

16:06:29 20                    I have another one if you'd like from 1996.

21                    THE COURT:  No, don't give me another one

22    right now.  Let's make sure I got that one.

23                    MS. MARAS:  Yes.

24                    THE COURT:  You gave the citation.

16:06:42 25                    MS. MARAS:  *Robinson versus Attorney*

1     *General*, 957 F. 3d 1171, that's Eleventh Circuit,

2     Eleventh, sorry, 2020.  Sorry.

3            THE COURT:  This is the case that has to do

4     with masks?

16:07:04 5            MS. MARAS:  It has denying a motion of stay

6     of preliminary injunction enjoining public health order

7     issued in response to COVID-19 pandemic because it

8     invaded constitutionally protected Fourteenth Amendment

9     rights.

16:07:18 10           I mean all the orders in that case were --

11           THE COURT:  Stop.  Stop.  Stop.

12           What were the facts in that case?

13           MS. MARAS:  With the Attorney General?

14           Hold on, let me go find out.  Yeah, let me

16:07:30 15     pull up my notes.

16           THE COURT:  That's what you were doing.

17           MS. MARAS:  Yes, Your Honor.

18           I'm pulling it up.

19           THE COURT:  Is that a mask-wearing case?

16:07:45 20           MS. MARAS:  Yeah, so the Governor, yeah,

21     the Governor of Alabama declared the state in a public

22     health emergency due to outbreak and, yes, it was about

23     masks.

24           THE COURT:  But the Governor of Alabama

16:07:54 25     didn't require the masks, did they, back in 1920 -- I

1   mean in 2020?

2          MS. MARAS:  In 2020.  This is a 2020 for

3   the COVID-19.  He declared it, yes.

4          THE COURT:  So he -- no, you make sure, you

5   make sure you're correct.

6          You're saying that the Governor of

7   Alabama -- now, this, this of course is Eleventh Circuit,

8   okay -- so you said the Governor of Alabama required

9   people to wear masks, and you're saying that the Circuit

10  Court held that it was a violation of --

11         MS. MARAS:  Well, I'm --

12         THE COURT:  -- of citizens' constitutional

13  rights to do that?

14         MS. MARAS:  No, it wasn't just masks.

15         Your Honor, I didn't know we were citing

16  the law because I'm not a lawyer and I've only had two or

17  three hours to do this because I am a single parent and I

18  actually work, too.

19         So I could tell you that there was a TRO

20  that was filed and put together because of the

21  restrictions that were imposed on people based on a

22  mandate in May, so that clearly states that you can't

23  deny a motion for stay by enjoining a public health

24  order.

25         So that's basically how it is.

1          And masks, you know, were in that motion

2     that was put forward in a case in 2021 versus the

3     Secretary of the U.S. Department of Health.  There

4     actually a TRO was put forward for granting the TRO to

16:09:30   5     them for mask and vaccine mandates already.  So that was

6     actually done, and this was done on just the 24th of

7     August.

8          And so it was a motion was granted in

9     *America's Frontline Doctors versus Xavier Becerra,*

16:09:51  10    *Secretary of Department of Health and Human Services*, and

11    they were given the TRO based on that.

12         THE COURT:  Let me stop you, and then I'm

13    going to -- two more minutes, and then I'm going to hear

14    from the other lawyers, the lawyers --

16:10:03  15         MS. MARAS:  Um-hmm.

16         THE COURT:  -- on the other side.

17         Give me, if you have them, the citation of

18    two cases --

19         MS. MARAS:  Yes.

16:10:11  20         THE COURT:  -- that are very similar to

21    yours where the School Board imposed masking requirements

22    and where the Court held -- granted a temporary

23    restraining order against the enforcement of the wearing

24    of the mask.

16:10:27  25         That's a very specific question.

1    MS. MARAS:  Correct.  Correct.

2    And that's very interesting you should ask

3    that because I actually found that with the documents

4    that you haven't seen yet.

16:10:37 5    In fact, in the State of Ohio, we actually

6    have a school that since 2020 has not had masks and they

7    actually implemented other protocols and it has been

8    successful.

9    In fact, over a year not mask wearing --

16:10:54 10    and this is a school with 700 students -- they've only

11    had two cases of confirmed COVID and it was outside of

12    the school.

13    So what I'm trying to point out here, Your

14    Honor --

16:11:03 15    THE COURT:  Let --

16    MS. MARAS:  Yes.

17    THE COURT:  Let me stop you.

18    MS. MARAS:  Um-hmm.

19    THE COURT:  You're not answering my

16:11:08 20    questions, and I'm not sure that the facts that you're

21    citing in the cases are correct.

22    So I'm asking --

23    MS. MARAS:  They're not?

24    THE COURT:  I'm asking you a very simple

16:11:17 25    question.

1          MS. MARAS:  Uh-huh.

2          THE COURT:  And the answer could be yes or

3     no in terms of whether there are cases very similar --

4          MS. MARAS:  Yes.

16:11:30  5     THE COURT:  -- to yours where Courts have

6     granted temporary restraining orders against school

7     systems or other entities like that based on, you know,

8     the Fourteenth Amendment violation of rights.

9          MS. MARAS:  Yeah.  I just --

16:11:48 10     THE COURT:  Asking you for precedence.

11         MS. MARAS:  Yes.

12         THE COURT:  Because that's the way we --

13         MS. MARAS:  Yes.  Yes.

14         And I do cite -- I just cited a TRO that

16:11:55 15     was given as a restraining order to the Secretary of

16    Health and it was issued on the 24th of August this year.

17         Also, a Judge in South Carolina Supreme

18    Court struck down Columbia's public school mask mandate

19    based on the same reasons.

16:12:12 20     So and I mean, in my filing I have a case

21    as well that struck it down cited.  It was in my exhibit

22    where it has been struck down, too.

23         So there are multiple cases where they

24    argue that your constitutional rights should succeed any

16:12:31 25    arbitrary power that is being enforced.

1          So it's happening all across the nation,

2     all the parents are now filing to get these done, Your

3     Honor.

4          THE COURT:  I haven't found those cases,

16:12:40  5     but let me just tell you this.  You said something about

6     the Secretary of Health or someone granted a restraining

7     order.

8          That's not your case.  That's not the kind

9     of case that we have here so --

16:12:54 10          MS. MARAS:  It's about masks, Your Honor.

11          The Wisconsin Supreme Court struck down the

12     state-wide mask mandates.

13          Kentucky, Boone County, struck down the

14     government mask mandate for public schools.

16:13:08 15          South Carolina Supreme Court struck down

16     the public school mask mandates in Columbia.

17          So yes, they have.  There are many cases.

18     A simple search will find that they have --

19          THE COURT:  Okay.  I'm going to give you

16:13:19 20     two, two minutes more to say anything you want to say

21     about your case or in support of your case, give you

22     about two, two more minutes, and then I'm going to turn

23     to the other side and give them an opportunity to speak.

24          And then we'll conclude.

16:13:36 25          MS. MARAS:  Excellent.

1          Well, Your Honor, reading -- reading their

2     ambush of combined motions, I was a little bit frazzled

3     that they tried to even take -- I was actually repulsed

4     to see that they were telling me that I don't have

16:13:52  5     standing, but I do have standing.

6          And I was actually contemplating on

7     voluntarily withdrawing my TRO and requesting a

8     scheduling hearing for a -- for an injunction based on

9     that because I do have standing.  And that has been

16:14:09 10     proven only because there are cases that find that

11     financial harm, and if it comes to me because of actions

12     you've done against my child, the irreparable harm that

13     is being caused once for violation of civil liberties, of

14     any liberties, is irreparable harm according to the law

16:14:26 15     of the land.

16          But if you want to nitpick and not -- and

17     exclude all violations of both the federal and state

18     Constitutions and even go down to that level and argue

19     this, the irreparable harm is that they don't know what

16:14:43 20     is happening.

21          Science is constantly in flux.  Science is

22     in flux, and if you don't have the subject matter experts

23     to actually cite the science and implement the procedures

24     that will keep kids healthy and happy, that is a concern.

16:14:58 25          Now, in Ohio, yes, 2012, the case of *Goss*,

1    we have *Goss versus Lopez*, the Supreme Court said that

2    there should be due process, and that I and my child is

3    entitled -- this is the only state where that law has

4    happened -- is entitled to have an education without

16:15:33  5    putting their property rights or liberty rights at risk.

6                    And this is, you know, one they argue

7    whichever, but this is -- this is the foundation of it

8    because there's a Federal Constitution for my, you know,

9    Fourteenth Amendment Section I, that no state shall make

16:15:50 10    or enforce any law that shall abridge the privileges or

11    immunities of citizens of the United States, nor shall

12    any state deprive any person of life, liberty, or

13    property, without due process law.  And this has

14    happened.

16:16:04 15                    We can cite Ohio Constitution 16, redress

16    of injury; due process; the Ohio Constitution of

17    inalienable rights, the necessity of knowledge.

18                    And just like I said, everything that this

19    mask mandate does, it records data, and that is a direct

16:16:18 20    violation.  There is a word to the statement and to the

21    definition when they're collecting health care data of

22    children and they are compelling them to comply with the

23    health care system that our Constitution says should

24    never happen no matter what law, local rule, either

16:16:33 25    federal or state, they can't do that.

1          And right now I'm being asked to show the

2     product because no one has attached it.  I have offered

3     expert testimony of a man that has over three hundred

4     expert cases in court, and I presented that to the Board

16:16:48  5     and they refused because they have taken the directive

6     from non-subject matter experts and are imposing that and

7     causing harm to my child and all the other children.

8          And if they're not at the position to be

9     sued for their action and pay the medical bills that will

16:17:05 10     come out of this, then they should not be implementing

11     anything because it is very careless, and our children

12     should be protected.

13          THE COURT:  Thank you very much.

14          Thank you very much.

16:17:14 15          Let's go then to counsel for the

16     defendants, Ms. Chmiel or Mr. Feher, whoever wishes to

17     speak.

18          And just you can respond to any of her

19     arguments, or you can go directly to your own, own point.

16:17:36 20          I do have your brief, I've read it, but if

21     there are things you want to highlight, you may do so at

22     this time.

23          MR. FEHER:  Thank you, Your Honor.

24          Obviously this is a -- this is an issue

16:17:47 25     that sparks a lot of emotion, both here and around the

1  country.

2        I think you can appreciate that this is a

3  difficult issue for any School Board to deal with because

4  there is such high emotion, because there are, as is the

16:18:04  5  habit today, many people out on social media talking

6  about what they say is the science and isn't the science.

7        I think what is fair to say is that the

8  Board here took an action that was, first of all,

9  authorized by Ohio statute.  The discretion for local

16:18:27 10  School Boards to make these decisions has been mandated

11  by this legislature.

12        We know that the School Board here

13  promulgated a specific rule about how to deal with

14  upcoming or future pandemics or rises in infectious

16:18:47 15  cases.

16        We know that that's what happened here.

17  The materials we've provided you lay out in detail many

18  of the sources, you know, learned, accepted sources --

19  the CDC, the Ohio Department of Health, right down to the

16:19:05 20  Cleveland Clinic -- and their recommendations that this

21  mask mandate be used.

22        Mr. -- or Dr. Barnes' affidavit has laid

23  out the rationale for it with the understanding that

24  there would be some people who are not happy about the

16:19:22 25  mandate.  That, nonetheless, the considerations regarding

1    continuity of schooling, regarding the importance of

2    avoiding forced out-of-school learning and the very

3    negative effects that those have on students, those are

4    all important considerations, and on balance they struck

16:19:46  5    the decision that said they thought a mask mandate was

6    appropriate to keep the continuity of education.

7                    They are not alone in that.  That is what

8    the majority of districts in this area have done.  They

9    certainly didn't arrive at it willy-nilly.

16:20:07 10                    They certainly considered arguments that

11    were made by the parents, including the plaintiff here.

12    And there is, as far as I've been able to see in any of

13    the papers or in any of the literature, not any serious

14    suggestion that either the plaintiff's daughter or

16:20:25 15    anybody else is at a serious medical risk for having worn

16    a mask to school.

17                    Certainly those students that have

18    documented risks or whose doctors say they shouldn't wear

19    a mask are entitled not to wear a mask.  The policy has

16:20:44 20    specific exceptions for them.  It is tailored to

21    accommodate any medical issues and any psychological

22    issues.

23                    So it is not any broader than it needs to

24    be.  It is well-reasoned.

16:20:59 25                    As to the constitutional issues, we just

1    don't -- we've been unable to locate any authority to

2    suggest that being required to wear a mask is in any way

3    a deprivation of liberty or any other constitutional

4    right.

16:21:17  5          And absent an allegation that the policy

6    impinges on a constitutional right, there's obviously no

7    basis for a 1983 claim, and there's certainly no basis

8    for an assertion here that anybody faces irreparable harm

9    by maintaining the status quo of wearing these masks.

16:21:37 10          The case law, I haven't had a chance to

11   review any of the case law that the plaintiffs have cited

12   here, although I have had a chance to look quickly at the

13   *Robinson* case that she cited.

14          That is a case that had to do with the

16:22:00 15   effect of shutting down elective medical procedures,

16   people seeking abortions, which is, as we know, an

17   established constitutional right, at least at this time.

18   So that case really has very different facts than the

19   case here.

16:22:14 20          And I'm, you know, whether it's *Marbury* or

21   any of the other cases we've discussed, we're not aware

22   of any authority that suggests that there's any

23   constitutional impairment associated with what has gone

24   on with this mask policy.

16:22:30 25          So we would, again, refer to the arguments

1   in our brief.

2                    And I would also highlight the fact that

3   the standing issue is significant to the defendants here

4   because the flip side of it is that if they prevail on

16:22:50 5   the merits of this case, that decision will have no

6   binding effect because --

7                    MS. MARAS:  I object.  I object.

8                    That's one of your motions to dismiss.

9                    I object, Your Honor.

16:23:03 10                    THE COURT:  Please let him complete what

11   he's doing.

12                    I don't think he interrupted you at all.

13   And when we get done, if there's something else you want

14   to say in conclusion, I'll let you do it, but our

16:23:17 15   practice and protocol is not to interrupt.

16                    And so he hasn't interrupted you and he has

17   disagreed with a lot of things that you've said, so let's

18   let him finish.

19                    MR. FEHER:  Thank you, Your Honor.

16:23:29 20                    So the issue is significant to us.  And

21   obviously standing must appear from the face of the

22   complaint, and it's relevant to the motion for temporary

23   restraining order because obviously if you don't have

24   standing on the face of the complaint, you don't -- you

16:23:51 25   cannot demonstrate a substantial likelihood of success on

1    the merits.

2                    THE COURT:  Let me -- let me ask you a

3    question about that.

4                    I have had cases in the past where

16:24:06  5    plaintiffs thought to not only reference themselves but

6    others who are related or who are part, who are involved

7    in the same set of circumstances, and we've always said

8    exactly as you're saying, that they cannot do that, they

9    cannot -- a pro se litigant cannot represent other

16:24:29 10    parties.

11                    I understand that.

12                    I haven't researched the law on this.  So

13    that would mean that she clearly could not represent her

14    daughter, "daughter."

16:24:50 15                    Is there a difference?  She's got two

16    plaintiffs now.  One is the minor, a minor through her

17    parent Terpsehore Maras, and that's her, and then she has

18    another one, herself.

19                    Would she be deemed if she was suing for

16:25:10 20    herself, but because the child is a minor would she have

21    rights there, or is the law established that she cannot

22    sue in her own name, through or on behalf of her -- on

23    behalf of her child?

24                    MR. FEHER:  Your Honor.

16:25:31 25                    THE COURT:  In other words -- go ahead.

1        MR. FEHER:  If I -- if I understand the

2   question correctly, the law is that, for several reasons,

3   a plaintiff, an adult parent who might be entitled to

4   proceed pro se on their own claim, may not proceed on

16:25:51  5   behalf --

6        MS. MARAS:  Your Honor, I object to

7   discussing -- I object to arguing the motion to dismiss

8   and I'd like a standing objection.  I'd like a standing

9   objection.

16:26:01  10        THE COURT:  Okay.  Overruled.

11        And, yeah, I'll give you a chance

12   to -- your objection is already on the record so that's

13   fine.  I'll take note of that.

14        But I'll overrule your objection.  I can

16:26:12  15   hear this, and I want him to tell me what he -- what he's

16   talking about.

17        And I want you to understand why, because I

18   can -- I could deny -- I mean, I could grant your motion

19   to dismiss, but I don't have to grant a motion to dismiss

16:26:31  20   on a preliminary injunction.

21        All I have to do is to say you're not

22   likely to succeed on the merits because you would not

23   later be able to pursue these claims on behalf of

24   your -- on behalf of your child.

16:26:47  25        And that would be part of the motion -- I'm

1    sorry -- that would be part of the motion for preliminary

2    injunction.  But whether I dismiss the case or not, I

3    certainly can consider whether your case is likely to be

4    dismissed when we get on the merits of it.

16:27:03  5                 So I want to hear his argument on that.

6                 MR. FEHER:  Thank you, Your Honor.

7                 I'm trying to remember where I was.

8                 Whether -- an adult may proceed on their

9    own claim for their own claim for damages individually

16:27:22 10   without counsel.  That's at a choice, a choice an adult

11   can make, but because a child cannot make that decision

12   legally, that the parent may not proceed on their behalf.

13                 And, therefore, the case law in the Sixth

14   Circuit and, frankly, around the country has always held,

16:27:45 15   including in the context of 1983 cases, that

16   plaintiffs -- plaintiff parents may not represent the

17   interests of their children pro se.

18                 And in this case, the face of the complaint

19   I think makes clear that the claim is brought on behalf

16:28:06 20   of the daughter; not on behalf of Ms. Maras.

21                 And to the extent that it might be argued

22   to be on behalf of Ms. Maras, the law is also clear that

23   a parent does not have a viable claim under 1983 for

24   alleged actions that impact a family member.

16:28:27 25                 So either way --

1       MS. MARAS:  Your Honor, may I --

2       THE COURT:  Will you please let him finish?

3       Did he interrupt you once?

4       MS. MARAS:  But the issue is a lawyer --

16:28:39 5  that I should be a lawyer to be successful?  I can cite a

6   case from the Sixth District that says there are

7   exceptions to these rules.

8       THE COURT:  Would you please hush?  I hate

9   to use those words.  You know, I don't usually tell

16:28:53 10  parties --

11      MS. MARAS:  I just feel like I'm being

12  disadvantaged because the lawyer is getting time to cite

13  cases for you whereas I'm the plaintiff and you're

14  telling, you know -- it's okay.  I apologize, Your Honor.

16:29:05 15      Please go ahead.

16      THE COURT:  You should, because I gave you

17  a chance and I asked you about cases and I gave you an

18  opportunity at the end to say anything you wanted to say.

19      So don't -- don't make --

16:29:19 20      MS. MARAS:  I object to that because the

21  motion to dismiss and standing shouldn't be discussed

22  right now.

23      THE COURT:  Just don't -- just don't

24  interrupt again.  That's all I'm telling you.

16:29:31 25      Don't interrupt again.  Don't interrupt

1    again.

2              When I want you to speak, I will let you

3    know when.  And I will give you a brief opportunity at

4    the end, but do not interrupt once more, not once.

16:29:45 5              Mr. Feher, go ahead and complete your

6    argument.  I don't want to hear another thing out of

7    Ms. Maras while you're talking.

8              MR. FEHER:  Thank you, Your Honor.

9              I think, as I said, the case law we've

16:29:57 10   cited in our brief we think is very definitive on the

11   issue.

12             It does go to directly the likelihood of

13   success element of the request for a TRO, and we think

14   that it is dispositive as well as the other matters that

16:30:13 15   we've pointed out in the brief as to the deficiency of

16   any claim, either under the Constitution or meeting the

17   elements of Rule 65.

18             THE COURT:  All right.  Thank you.  Thank

19   you, counsel.

16:30:27 20             Ms. Maras, I'll give you one minute.

21             MS. MARAS:  First of all, again, I'd like

22   to state my objection to discussing the motion to dismiss

23   without giving me the time allotted to me by the Court to

24   even study that on the merits.

16:30:45 25             Whether issuance of an injunction would

1    cause substantial harm to others is the question and

2    whether public interests would be served.

3                Now, as far as my standing, I'm the mother

4    of the minor and I'm also -- she's -- I'm on her behalf

5    as a plaintiff.  And while they argue I don't have a

6    right and the school district argues that I have no

7    standing, respectfully I believe I fit within an

8    extension to the rule cited.

9                In *Works versus Commissioner of Social*

10   *Security*, 886 F. Supp. 2d 690, Southern District of Ohio,

11   2012, the Court recognized an exception to the general

12   rule of a pro se plaintiff cannot represent a minor.

13               In this case, the Court concluded that the

14   same policy considerations which allow a parent to file a

15   pro se Social Security appeal on behalf of the minor

16   apply also in this case.  Ms. Works has presumably borne

17   the costs of his medical treatments documented in the

18   record, and that would also apply to me.

19               I have a personal stake in the action

20   because I am a single parent and assume all medical costs

21   related to injuries sustained by daughter.

22               I'm also in the process of obtaining legal

23   counsel who is attempting to file pro hac vice so that I

24   may have representation during my complaint.

25               So I do have standing because that case

1   found that I fit that exemption.

2                   THE COURT:  Okay.  Give me the case.

3                   What is the case again?

4                   MS. MARAS:  Yes.  *Works versus Commissioner*

16:32:36  5   *of Social Security*, Southern District of Ohio, 2012.

6                   THE COURT:  What is the cite?

7                   MS. MARAS:  It says -- yes, the citation is

8   886 F. Supp. 2d 690, and it says, "In this case the Court

9   concludes that the same policy considerations which allow

16:32:54 10   a parent to file a pro se Social Security appeal on

11   behalf of a minor child apply in this case."

12                   And this is relating to health, and because

13   her costs that would be rendered from the harm that she's

14   being caused by these statements that they're saying of

16:33:13 15   citations, status quo is not the law.  And nothing, no

16   pandemic, nothing suspends the rights of our

17   constitutional liberties.  It's unconstitutional.  It

18   doesn't matter what authority they claim.

19                   They took an oath and that's a direct

16:33:29 20   violation of the U.S. Constitution and the Ohio State.

21   You can't cancel on civil liberties because of the

22   pandemic.

23                   And then making a statement as, oh, there's

24   social media, nobody cares about social media, we're

16:33:41 25   talking science.  I cited actual science, testing,

1    studies, experts.  And, you know, the superintendent is

2    not a medical professional and he's not a scientist.  I

3    leave that to scientists.

4                    THE COURT:  You've got to conclude now, you

16:33:57 5    may conclude.

6                    Just conclude now.  I'll give you just a

7    very brief chance to just conclude your argument.

8                    MS. MARAS:  The lawyer made compelling

9    arguments that the facts may be different to the case of

16:34:06 10    Alabama which is the one that they only pulled out

11    because the others were not mask mandates, but the law

12    remains the same.

13                    The legal principles would apply.  You can

14    distinguish every case on the facts, but the law is the

16:34:20 15    law.  That's the case.

16                    And the fact that we have, you know, this

17    motion to dismiss put together and I have a massive law

18    firm against me, and they're telling me that I can't

19    represent my child when it has been well-established that

16:34:31 20    when it comes to health and the costs that I must bear I

21    have every right to represent her because I cannot afford

22    to pay ten, $15,000 for an attorney.

23                    I'm a single parent, and I'm trying to

24    protect my child and not cause myself financial harm

16:34:46 25    because of --

1          THE COURT:  All right.

2          MS. MARAS:  -- these mandates that are

3    blanket statements that don't rely on actual science.

4          THE COURT:  All right.  Ms. Maras, so that

16:34:55  5    that concludes the argument that I want to hear from the

6    parties.

7          Let me say -- say this.  Mr. Feher is right

8    and these are emotional issues, and I think for society

9    these are difficult issues.

16:35:19 10          I know that.

11          And so all a Judge can do is hear the

12    parties, gather the facts, and apply the law as the Judge

13    understands the law to be.

14          It is, you know, that's what I have to do,

16:35:42 15    put myself in that context.  I can't let emotion, one

16    side or the other, one way or the other, I can't let

17    either side, emotion on either side, dictate how I will

18    decide cases.

19          I've never done that in 27 years I've been

16:36:01 20    on the Court, and I'm not going to do it now, but I am

21    bound by the law as I understand it.

22          And so what I'm going to do, having

23    received this information from the plaintiff, having

24    provided an opportunity for defendants to put on their

16:36:19 25    position, is decide this motion as to whether I will

1    grant the extraordinary relief of restraining the Board

2    of Education, Mayfield City School District Board of

3    Education from enforcing their mask requirement or

4    mandate, or whether I will deny that motion, in which

5    case they can continue to enforce it until -- until the

6    case is resolved or until a preliminary injunction would

7    be issued in the plaintiff's favor, if there were to be

8    such an order.

9              Ms. Maras, the -- if a TRO is denied, then

10   the Court is required to set the case for another

11   preliminary proceeding, and that's a preliminary

12   injunction proceeding.

13             At that point, the parties will have done

14   perhaps some discovery, gather more information, and then

15   the hearing would likely be held in person with witnesses

16   being called, although the pandemic could affect that.

17             But that's, that would be the second stage

18   in terms of an injunction if the TRO is denied.

19             If the preliminary injunction is

20   denied -- of course, if it was granted, then it would

21   preclude them from acting until the case is over.

22             If that's denied, the preliminary

23   injunction, assuming your case survived and didn't go out

24   on a motion to dismiss, then you would ask for the

25   injunctive relief still, but at the end of your case as

1    relief in your case.

2              That's the third stage.

3              And so that, that would be the process.

4              Now, the defendants are allowed to file a

16:38:26  5    motion to dismiss.  This is an early stage, and I would

6    give you an opportunity to respond to a motion to

7    dismiss.

8              Now, let me say this:  That the Court, of

9    course, on its own motion can dismiss a case for lack of

16:38:46 10    subject matter jurisdiction, but this, this may not

11    pertain to subject matter jurisdiction, but whatever, I

12    would not dismiss it until you had a chance to file an

13    opposition to the motion to dismiss.

14              But I tried to explain to you that I still

16:39:08 15    can consider whether or not you will be precluded based

16    on standing because while even if I didn't dismiss your

17    case, it's something I can consider in regard to one of

18    the elements I have to determine in respect to the motion

19    for temporary restraining order.

16:39:26 20              One of the things I have to determine is

21    whether you're likely to succeed on the merits of the

22    case.  If you're not a proper party, then of course

23    you're not going to succeed on the merits of your case.

24    And so I can take a peek at that issue without deciding

16:39:49 25    it finally, even if, even if I decided, you know, to

1    allow you to file something later on the motion to

2    dismiss.

3              Now, that may be difficult to understand,

4    and I understand why.  It is difficult for laypersons to

16:40:10 5    file a lawsuit, to do research, and to pursue cases in

6    the Court.  You've already articulated this.  There are

7    lawyers on the other side who are trained in the law and

8    how to present evidence and how to make arguments, and

9    you don't have that training.

16:40:27 10             And so it's a much better case for a Judge

11   to have lawyers on both sides who can sharpen the issues

12   and can respond to my questions so that I'm in a position

13   to resolve a case.

14             But you do have a right on your own part to

16:40:46 15   bring a case.  I've got to decide whether you have a

16   right to bring it in this particular instance, but if you

17   have that right, then you can represent yourself.  You're

18   not allowed to represent anyone else, as a general

19   matter.

16:40:59 20             So I'm going to have to decide all these

21   things, but I'm not going to -- initially all I'm going

22   to do is decide whether you should get a TRO because

23   that's really what's in front of me right now.

24             And I have to go through the factors.

16:41:15 25   We've talked about some of them:  Whether you are likely

1     to succeed on the merits; whether your child would

2     suffer -- or you would suffer irreparable harm; whether

3     it's in the public interests to grant one; and so on and

4     so forth, those factors that you've seen, that counsel

16:41:35 5     have addressed.

6     And that's what I've got to do.  And then

7     when I do that, it's not going to be a long order.  When

8     I do that, then I'll grant or deny the TRO.

9     So that's -- that's where we're going, is

16:41:51 10     that next step.

11     All right.  That's all I have, Ms. Maras.

12     Anything else before I ask opposing counsel

13     whether they have anything else?  And then we'll conclude

14     right now.

16:42:00 15     MS. MARAS:  Yes, Your Honor.

16     I will be e-mailing you the information

17     that demonstrates that I do have standing.

18     Also, you know, I find it troublesome

19     that -- you know, the Court is for the people, not for

16:42:14 20     lawyers.  And I find it troublesome that, you know, it's

21     being seen as if the people are not allowed in people's

22     Court without a lawyer.

23     I have done extensive work protecting not

24     only my child's interests but my own, and I would like,

16:42:30 25     if possible, when you actually see my documents to

1    provide me access for the electronic filing as well.

2              THE COURT:  Okay.

3              MS. MARAS:  Above all, the Constitution

4    prevails and that is what's important.  Any violation of

16:42:44 5    the Constitution causes irreparable harm regardless.

6              THE COURT:  All right.  That's all.

7              So we'll deal with, you know, whether you

8    should have filing status later.  I told you this was a

9    situation where I could receive papers and informally

16:43:02 10   because of the nature of the circumstances.  You provided

11   papers to me, and the ones we have we'll consider.

12             But you can't -- you can't just keep

13   mailing papers that you want me to consider for a motion

14   for temporary restraining order because the whole notion

16:43:20 15   is it should be quick, and the parties have put it in

16   front of me.

17             You can't just keep filing parties.

18             MS. MARAS:  I --

19             THE COURT:  So --

16:43:31 20             MS. MARAS:  I agree.

21             I'm referring to the motion to dismiss and

22   the standing because I wasn't aware that we were going to

23   be hearing that case that has been put together.

24             I had requested the Court to bifurcate the

16:43:40 25   two, but since you're considering it and taking a peek, I

1    would like to at least defend myself since I haven't had

2    the appropriate time by the Court to answer that.

3                    THE COURT:  You did.  You gave me a case

4    that you told me you thought countered what they were

16:43:55 5    saying, so you obviously did the research and you gave me

6    a case, so I'll look at your case.

7                    Mr. Feher, anything further before we

8    conclude?

9                    MR. FEHER:  No, Your Honor.

16:44:03 10                   THE COURT:  All right.

11                   Okay.  Thank you, all.  Appreciate your

12    time.

13                   MR. FEHER:  Thank you, Your Honor.

14                   Have a good day.

16:44:10 15                   MS. MARAS:  Thank you, Your Honor.

16                   MS. CHMIEL:  Thank you, Your Honor.

17                   (Proceedings concluded at 4:44 p.m.)

18                         -  -  -  -

                    C E R T I F I C A T E
19                   I certify that the foregoing is a correct
     transcript from the record of proceedings in the
20    above-entitled matter.

21

22    **/s/Susan Trischan**
     /S/ Susan Trischan, Official Court Reporter
23    Certified Realtime Reporter

24    7-189 U.S. Court House
     801 West Superior Avenue
25    Cleveland, Ohio 44113
     (216) 357-7087